UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

| | |
|---|---|
| Cory Soderberg, Adam Klym, Joe Jadoonath, Nathan Ostlund and Ryan Rud, on behalf of themselves and all other individuals similarly situated, | Court File No. 10-CV-3429 (PAM/JJG) |
| Plaintiffs, | **MEMORANDUM IN SUPPORT OF CONDITIONAL CERTIFICATION AS AN FLSA COLLECTIVE ACTION** |
| v. | |
| Naturescape, Inc. | |
| Defendant. | |

_____

# INTRODUCTION

Over the past three years, Defendant Naturescape, Inc. ("Defendant") has employed individuals, including Plaintiffs, as manual laborers in its lawn care business. As employees of Defendant, Plaintiffs regularly worked more than 40 hours per week. But Defendant never paid them "traditional" overtime (one-and-one-half their regular rate of pay per overtime hour).

Instead of paying its workers "time-and-a-half," Defendant implemented a corporate-wide scheme that violates the Fair Labor Standards Act ("FLSA"). Under its plan, Defendant paid Plaintiffs no more than one-half their regular pay rate for each overtime hour worked they worked. Consequently, Plaintiffs received merely one-third the wages due them under traditional overtime.

Defendant deprived Plaintiffs of overtime wages in other ways. For instance, it paid them non-discretionary bonuses, but it never included these payments when calculating Plaintiff's overtime compensation. Defendant's failure to pay an overtime premium on these bonuses was illegal and further harmed Plaintiffs. By any measure, Defendant's corporate-wide practices deprived Plaintiffs of wages to which they are entitled under federal law.

Plaintiffs are not alone, and they seek to represent others—namely, those individuals who Defendant employed as "Branch managers" or "Lawn Specialists" over the past three years. Although these other individuals may have worked in different states and locations, Defendant has paid them and Plaintiffs under the same plan. Accordingly, Defendant has harmed these other "similarly situated" individuals in the same way as Plaintiffs.

Because Plaintiffs and others have suffered under a single scheme, Plaintiffs move this Court to: (i) conditionally certify this matter as a collective action under the FLSA; (ii) facilitate notice of this collective action to potential "opt-in" plaintiffs (by approving Plaintiffs' Proposed Notice, and by authorizing Plaintiffs' counsel to disseminate it); (iii) require Defendant to post notice of this collective action at its various branch locations; and, (iv) require Defendant to produce contact information for potential "opt-in" plaintiffs.

## **STATEMENT OF FACTS**

Over the last three years—in Minnesota, Wisconsin, Iowa, Illinois, Indiana and Kentucky—Defendant has employed individuals as "Branch Managers" and "Lawn Specialists."[1]  Although these individuals have different titles, their work duties are essentially the same.[2]  Regardless of title, they spend more than 80 percent of their time performing manual labor such as applying lawn chemicals, mowing lawns, trimming shrubs, and installing landscaping materials.[3]  Plaintiffs each worked as Branch Managers or Lawn Specialists over the past three years.[4]

During their tenure with Defendant, Plaintiffs regularly worked more than 40 hours per week, especially during Defendant's busy season (the months of March to December).[5]  They were all non-exempt laborers for purposes of the FLSA, and they were all entitled to receive "traditional" overtime compensation.[6]  But, Defendant did not pay Plaintiffs (or any of its Branch Managers or Lawn Specialists) overtime as required by the FLSA.[7]

Rather than paying traditional overtime, Defendant adopted an unlawful pay policy that it applied uniformly to Plaintiffs and the employees they seek to represent.[8]  Defendant did not pay them on a salary basis, nor did it pay them on a

---

[1] Complaint, ¶ 31
[2] Id. at ¶ 16
[3] Id.
[4] Complaint, ¶ 4
[5] Complaint, ¶ 19
[6] Id. at ¶16
[7] Id. at ¶ 20; Soderberg Decl., ¶ 8; Jadoonath Decl., ¶8
[8] Id. at ¶¶ 20-22; Muller Decl., Ex. A

strictly hourly basis.[9] The salient features of Defendant's pay plan were (and are) as follows:

    a.    Plaintiffs did not receive a fixed salary for each hour that they worked in a week (regardless of how few or how many) along with an overtime premium.[10]

    b.    For each week that Plaintiffs worked, Defendant paid them their regular hourly rate multiplied by 40.[11]

    c.    In the weeks that Plaintiffs worked more than 40 hours, Defendant also paid them one-half their regular rate of pay for each overtime hour.[12]

    d.    In the weeks that Plaintiffs worked more than 40 hours, they also received the right to future bonus payments, which went into a "bank." These bank payments were calculated as one-half their regular rate of pay per each overtime hour. As long as Plaintiffs remained employed by Defendant, they were eligible to receive payments from the bank.[13]

    e.    Defendant paid Plaintiffs several other types of compensation, and it announced the criteria for measuring these wages in advance. These payments included without limitation: regular productivity bonuses

---

[9] Id.
[10] Id. at ¶ 17 and ¶¶ 20-22; Muller Decl., Ex. A
[11] Complaint, ¶ 21; Muller Decl., Ex. A; Soderberg Decl., ¶ 6a; Jadoonath  Decl., ¶ 6a
[12] Complaint, ¶ 21; Muller Decl., Ex. A; Soderberg Decl., ¶ 6b; Jadoonath  Decl., ¶ 6b
[13] Complaint, ¶ 21; Muller Decl., Ex. A; Soderberg Decl., ¶ 6c; Jadoonath  Decl., ¶ 6c

4

>(based on a pre-determined point system, reflecting the type, amount and quality of work completed in a certain period of time); summer bonuses; year-end bonuses; and, Christmas bonuses. [14]

The bank and other payments described above were not discretionary bonuses within the meaning of the FLSA.[15] Nonetheless, Defendant never included them into Plaintiffs' regular rate of pay for purposes of computing their overtime compensation.[16]

Over the past three years, Defendant's corporate-wide practices have deprived Plaintiffs from the full overtime wages they earned as Branch Managers and Lawn Specialists.[17] As one example, in 2009, Plaintiff Soderberg worked 405 hours of overtime.[18] Under the traditional method of overtime compensation, he was entitled to receive at least $11,846.25.[19] Defendant paid him only $4,521.15 for his efforts; hence, it deprived him of at least $7,846.01.[20]

As another example, in 2009, Plaintiff Jadoonath worked 445.25 hours of overtime.[21] He was entitled to receive $9,853.38 in traditional overtime.[22] Defendant paid him only $3,266.62 for all his overtime hours.[23] After Defendant's

---

[14] Complaint, ¶ 21; Muller Decl., Ex. A; Soderberg Decl., ¶ 6d; Jadoonath Decl., ¶ 6d
[15] Complaint, ¶ 26
[16] Complaint, ¶ 27; Soderberg Decl., ¶ 7; Jadoonath Decl., ¶ 7
[17] Complaint, ¶¶ 38-39; Soderberg Decl., ¶ 9; Jadoonath Decl., ¶ 9
[18] Soderberg Decl., ¶ 10c
[19] Id.
[20] Id.
[21] Jadoonath Decl., ¶ 10a
[22] Id.
[23] Jadoonath Decl., ¶ 10a

5

busy season ended, it made bank payments to him of $3,266.62.[24] Exclusive of these bank payments, Defendant shorted Plaintiff Jadoonath by at least $6,586.76; inclusive of these payments, Defendant still failed to pay him at least $3,320.14.[25]

To compound the harm it had caused them, Defendant never included bonus payments into Plaintiff Soderberg's or Plaintiff Jadoonath's regular rate of pay for purposes of calculating their overtime wages.[26] Consequently, they never received the overtime premium which they had earned with respect to these bonus wages.

Defendant has admitted that it paid *all* of its Branch Managers and Lawn Specialists in the same way—it admittedly paid Plaintiffs and the potential "opt-in" plaintiffs only 1/2 their regular rate of pay for each overtime hour, while offering to pay them an equal amount as a bonus.[27] Plaintiffs commenced this action simultaneously because they were all harmed by Defendant's unlawful pay practices.[28] In addition to Plaintiffs, other employees were likewise injured (and continue to be injured) by Defendant.[29] Indeed, since this lawsuit started, other former Lawn Specialists and Branch Managers have expressed their desire to join Plaintiffs.[30]

---

[24] Id.
[25] Id.
[26] Soderberg Decl., ¶ 10d; Jadoonath Decl., ¶10b
[27] Answer, ¶ 22
[28] Complaint, ¶¶ 31-32 and ¶¶ 37-41
[29] Id.
[30] Soderberg Decl., ¶ 12

6

In light of these facts, Plaintiffs ask this Court to conditionally certify this matter as an FLSA collective action and to facilitate notice to potential "opt-in" plaintiffs.

## LEGAL ARGUMENT

**A.  This Court Should Grant Plaintiffs' Request to Conditionally Certify a Collective Action.**

The FLSA, 29 U.S.C. § 216(b), specifically contemplates the pursuit of collective actions by "similarly situated" employees:

> [a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Collective actions empower "similarly situated" employees, whose claims are often small and unlikely to be brought on an individual basis, to join together and pool their resources to prosecute their claims in an efficient manner. See *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

All collective actions under the FLSA share three significant features. First, in order to participate, an employee must "opt-in." He or she must consent in writing to join the suit, and his or her consent must be filed with the court. *Id.* at 168. Second, the statute of limitations continues to run on each employee's claim until he or she files an "opt-in" form with the court. See *McKenna v. Champion International Corp.*, 1985 WL 8054, *2 (D. Minn., June 26, 1985) (noting that

7

under Section 16(b) of the FLSA, no person can become a party plaintiff until he has 'opted into' the class). Third, to serve the "broad remedial purpose" of the FLSA, courts can facilitate notice to other "similarly situated" employees to inform them of their opportunity to "opt-in." *Hoffmann-La Roche*, 493 U.S. at 173.

    1.    <u>This Court should employ a lenient standard to grant Plaintiffs' request for conditional certification</u>.

Courts use a two-step process to decide whether an FLSA case should be certified as a collective action. See *Burch v. Qwest Communications Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007). The initial "notice stage" occurs at the outset of litigation, before the parties have engaged in significant discovery. *Id*. At this first stage, the Court determines whether to conditionally certify a collective action for purposes of sending notice and conducting discovery. *Id*. And, it employs a "fairly lenient standard" that "typically results in 'conditional certification' of a representative class." *Dominquez v. Minn. Beef Industries, Inc.*, 2007 WL 2422837 at *2 (D. Minn. 2007).

The second stage of the process is usually precipitated by a defense motion for decertification, and it comes after discovery is substantially completed. *Id*. At this later point, a court can revisit the issue of certification. *Id*. When considering the matter for a second time, a court uses a stricter standard for deciding whether all the plaintiffs are similarly situated. *Id.*

Plaintiffs' present motion comes at the initial "notice stage" of this litigation. To date, the parties have engaged in nothing beyond initial, written

8

discovery. Accordingly, this Court should employ the well-recognized lenient standard when granting Plaintiffs' request to conditionally certify this matter as a collective action.

      2.     <u>Plaintiffs are "similarly situated" to the potential opt-in plaintiffs</u>.

Plaintiffs who seek to pursue a collective action under the FLSA must make one simple showing: that they are "similarly situated to the employees whom [they] seek to represent." *Id.* at *2 (quoting *Mares v. Caesars Entm't, Inc.*, 2007 WL 118877, at *2 (S.D. Ind. 2007)). At the notice stage, they face a low hurdle. See *Severtson v. Phillips Beverage, Co.*, 141 F.R.D. 276, 279 (D. Minn. 1992). They need only establish "a colorable basis for their claim that the putative class members were together the victims of a single decision, policy, or plan." See *Burch*, 500 F.Supp.2d at 1186.

Because a motion for conditional certification comes near the inception of an action, and because the standard of review is so lenient, a court may grant such a request "on the pleadings and any affidavits which have been submitted." See *Dominquez*, 2007 WL 2422837 at *2. Furthermore, at the notice stage a court makes no credibility determinations or findings of fact as to contrary evidence adduced by the parties. *Id.* Consequently, a defendant cannot rely on factual variations—i.e. different job titles, diverse work locations, distinct work hours, or different job duties—to defeat a motion for conditional certification. See *Burch*, 500 F.Supp.2d at 1190 (granting motion for conditional certification despite dissimilarities between putative class members).

9

In *Burch*, this Court granted the plaintiffs' motion to conditionally certify a class under the FLSA. *Id.* The group of plaintiffs included employees who worked in different locations, under different job titles, and under different work requirements. *Id.* In its attempt to defeat the motion for conditional certification, the defendant sought to rely upon these distinctions between the various employees. *Id.* This Court rejected the defendant's argument. *Id.* In so doing, it noted that while there were differences between the putative class members, they all alleged injuries from "the same off-the-clock practices," which practices were part of a "single, nationwide policy, by [the defendant] to illegally withhold overtime pay." *Id.*

Plaintiffs in the present case are similarly situated to the other employees they seek to represent. As noted in *Burch* (discussed above), the key inquiry is whether they were all the victims of a single policy or plan. Here, Plaintiffs have adduced sufficient facts to satisfy the minimal burden they face. The record shows that they and the potential "opt-in" plaintiffs were all victims of a single scheme, which scheme uniformly deprived them of overtime wages.

While the proposed class of plaintiffs includes individuals who worked under different titles, as either Branch Managers or Lawn Specialists, and who worked in different locations, these are distinctions without a difference for purposes of finding that they are all similarly situated. Regardless of their title or where they worked, they all performed the same type of manual labor for

Defendant. They all worked significantly more than 40 hours per week. Yet Defendant paid none of them traditional overtime wages.

Instead, Defendant paid Plaintiffs and the potential "opt-in" plaintiffs under the same plan, which afforded them only one-half their regular rate of pay for each hour of overtime. But for Defendant's illicit pay scheme, the Plaintiffs and the employees they seek to represent would have received all the wages they had coming.  It is the harm caused by Defendant's pay plan and related policies that unites them. Because they were all victims of the same corporate-wide policies, they are similarly situated for purposes of pursuing a collective action under the FLSA.

### B.   This Court Should Facilitate Notice to the Potential "Opt-In" Plaintiffs.

The FLSA empowers courts to facilitate notice to potential plaintiffs in various locations. 29 U.S.C. § 216(b).  There are important reasons why courts should exercise this power.  Court-facilitated notice of FLSA collective actions serves the interests of judicial economy.  See *Burch*, 500 F.Supp.2d at 1190-91. The benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170.  By getting involved early, a court can maintain control of the litigation and further the "legitimate goal of avoiding a multiplicity of duplicative suits." *Id.* at 172.

A court's engagement in providing notice of an FLSA collective action also serves the interests of justice. Until they have received notice and elected to "opt-in," potential plaintiffs risk losing their rights because the statute of limitations continues to run. See *Redman v. U.S. West Business Resources, Inc.,* 153 F.3d 691, 695 (8th Cir. 1998). Court-facilitated notice can prevent the erosion of these potential claims. See *Burch*, 500 F. Supp. 2d at 1191. A court's involvement is particularly warranted when the putative class is dispersed geographically. *Id.* In these circumstances, court-facilitated notice alleviates the difficulty Plaintiffs face in relying on "word of mouth" to provide timely and adequate notice to other employees who may have been harmed by the defendant. *Id.*

Here, this Court should facilitate sending notice to the potential "opt-in" plaintiffs. Specifically, this Court should do the following: approve Plaintiffs' Proposed Notice (and authorize Plaintiffs' counsel to disseminate it); order Defendant to provide Plaintiffs' counsel with contact information for the potential "opt-in" plaintiffs; and, require Defendant to post said notice alongside "opt-in" forms at conspicuous locations in its various branches.

By getting involved now rather than later, this Court will avoid a series of lawsuits in various forums, each involving the same types of claims by similarly situated employees. Furthermore, this Court's early involvement will tend to mitigate the harm caused by an erosion of the potential "opt-in" plaintiffs' claims. Finally, it is particularly appropriate for this Court to facilitate notice of this action because the putative class is dispersed among several states, and it would be

difficult for Plaintiffs' counsel to rely on word of mouth to provide timely, adequate notice.

>    1.  <u>The Court should order Defendant to furnish contact information for potential "opt-in" plaintiffs, and to post notice of this collective action in its places of business.</u>

Without the information necessary to identify and locate the potential "opt-in" plaintiffs, it is practically impossible to facilitate notice of a collective action. In light of this reality, courts have consistently ordered defendants to produce essential contact information about their current and former employees who may be similarly situated to the named-plaintiffs. For instance, courts have ordered defendants to produce names and addresses for putative class members. See, *Bailey v. Ameriquest Mortgage Co.*, 2002 WL 100388, *2 (D. Minn. 2002) (upholding order to disclose names and addresses of other potential opt-in plaintiffs). Courts have also ordered defendants to share dates of employment and redacted social security numbers for potential "opt-in" plaintiffs. See, *Patton v. Thompson Corp.*, 364 F.Supp.2d 263, 268 (E.D.N.Y. 2005) (ordering defendant to provide names, addresses, social security numbers, and employment dates of all putative class members). In facilitating notice, courts have gone further than simply requiring disclosure of contact information for potential "opt-in" plaintiffs. In addition, they have mandated defendants to post notices and "opt-in" forms in conspicuous locations at their places of business. See, *Sherrill v. Sutherland Global Services, Inc.*, 487 F.Supp.2d 344, 350-51 (W.D.N.Y. 2007).

In the present case, Defendant has contact information that is critical to implementing an effective means of contacting its current and former Branch Managers and Lawn Specialists. In order to keep this matter moving forward, and to assure that these potential "opt-in" plaintiffs receive timely notice, this Court should require Defendant (subject to the Protective Order in place) to do the following: to provide Plaintiffs' counsel the names, dates of employment, last known mailing and e-mail addresses, and social security numbers, of potential "opt-in" plaintiffs; and, to post in a conspicuous location at its various branches notice of this collective action along with "opt-in" forms.

    2.    <u>This Court should approve Plaintiffs' Proposed Notice.</u>

In collective actions, the notice to potential "opt-in" plaintiffs should be "timely, accurate, and informative." See, *Hoffman-La Roche*, 493 U.S. at 172. Here, Plaintiffs have submitted a Proposed Notice.[31] It serves to provide potential "opt-in" plaintiffs with "timely, accurate, and informative" notice. Accordingly, this Court should adopt Plaintiffs' Proposed Notice, and it should authorize Plaintiffs' counsel to disseminate it.

---

[31] Submitted as Muller Decl., Ex. A.

## **CONCLUSION**

The record before this Court presents more than a "colorable basis" to conclude that Plaintiffs are similarly situated to the individuals they seek to represent. Indeed, they were all harmed by the exact same plan and practices of Defendant. Accordingly, this Court should grant Plaintiffs' motion and issue an Order that provides as follows: (i) this Court conditionally certifies this matter to proceed as a collective action; (ii) this Court will facilitate notice of this collective action to the potential "opt-in" plaintiffs; (iii) this Court approves Plaintiffs' Proposed Notice, and it authorizes Plaintiffs' counsel to disseminate it; (iv) this Court orders Defendant (subject to the Protective Order in place) to produce contact information—names, dates of employment, last known mailing and e-mail addresses, and social security numbers—for the potential "opt-in" plaintiffs; and, (v) this Court orders Defendant to post in a conspicuous location at its various branches notice of this collective action along with "opt-in" forms.

RESPECTFULLY SUBMITTED,

                                       **MULLER & MULLER, PLLC**

Date: 5-4-2011                        /S/ ANDREW P MULLER
                                       Andrew P. Muller (No. 32467X)
                                       3109 West 50th Street, No. 362
                                       Minneapolis, MN 55410-2102
                                       (612) 604-5341

                                       **JOHN A. KLASSEN, PA**

                                       John A. Klassen, (No. 24434X)
                                       700 Lumber Exchange Building
                                       10 South Fifth Street
                                       Minneapolis, MN 55402
                                       (612) 204-4533

                                       **LAW OFFICE OF THOMAS J. CONLEY, LLC**

                                       Thomas J. Conley (No. 201625)
                                       900 IDS Center
                                       80 South Eighth Street
                                       Minneapolis, MN 55402
                                       (612) 839-8283

                                       **PLAINTIFFS' ATTORNEYS**