**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

---

Cory Soderberg, Adam Klym,
Joe Jadoonath, Nathan Ostlund, and
Ryan Rud, on behalf of themselves and
all other individuals similarly situated,

                Plaintiffs,

v.

Naturescape, Inc.,

                Defendant.

Court File No.: 10-cv-03429 (PAM/JJG)

**DEFENDANT'S MEMORANDUM OF
LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

---

## I.  <u>INTRODUCTION</u>

The Defendant, Naturescape, Inc. ("Naturescape"), respectfully submits this memorandum of law in support of its Motion for Summary Judgment ("Motion"). Named plaintiffs Cory Soderberg ("Soderberg"), Adam Klym ("Klym"), Joe Jadoonath ("Jadnooath"), Nathan Ostlund ("Ostlund"), and Ryan Rud ("Rud") along with the opt-in plaintiffs (collectively, "Plaintiffs") allege Naturescape violated the Fair Labor Standards Act ("FLSA") by failing to pay them an hourly wage plus time and one-half for all overtime hours. Plaintiffs were paid overtime pursuant to the fluctuating workweek method ("FWM") under 29 C.F.R. § 778.114 (2011). Under the FWM, employees are paid a salary and then one-half of their regular rate for all overtime hours worked. Since

1

the salary is compensation for all hours worked during the week (whether few or many), only the remainder one-half is due for overtime hours.

Plaintiffs do not dispute they received their bi-weekly salary regardless of how many hours they worked; the salary was greater than minimum wage; they were paid one-half their regular rate for all overtime based on a 40 hour workweek; and they had a clear and mutual understanding that this is how they would be paid.  What then, are Plaintiffs suing Naturescape for?

Plaintiffs simply want more money because Naturescape gave them more money. They want this Court to hold that because they were paid bonuses and their regular rate for overtime payments was paid at a higher rate than legally required - money above and beyond anything they were legally entitled to - the use of the FWM was unlawful. Further, Plaintiffs want this Court to hold that because Naturescape did not add the bonus payments back into their wages to calculate the regular rate for overtime purposes, the use of the FWM was unlawful - even though they were paid more per overtime hour than required, which accounts for most if not all of the difference.  Additionally, Plaintiffs want this Court to hold that because they were not credited for time not worked (such as lunch breaks), these hours they did not work did not go towards their overtime hours, and thus, the use of the FWM was unlawful.  Finally, in the event Naturescape owes Plaintiffs backwages, Plaintiffs want this Court to hold they are due time and one-half on all the overtime hours instead of half time.

Plaintiffs are not entitled to more money.  They admit they knew they would be paid a set salary plus ½ their regular rate for all overtime hours and so the FWM applies. Even if Plaintiffs' claims survive, as they had a clear understanding the FWM was used, their damages would be based on the use of the same.  Further, Plaintiffs who did not work overtime or receive a bonus could not have had the FWM defeated and should be dismissed.  Plaintiffs who received backpay and cashed their check for their alleged damages should be dismissed.  Plaintiffs who did not work overtime should clearly be dismissed.  Plaintiffs who rely on a finding of willfulness should be dismissed as Plaintiffs have no facts to support the same.  Branch managers are exempt from overtime and should be dismissed.  And finally, Rud never filed an opt-in and should be dismissed. Accordingly, even if Plaintiffs survive the Motion for Decertification and this Motion in part, many of their claims are improper and should be dismissed.

## II.   **STATEMENT OF FACTS**

For convenience reasons, Naturescape refers the Court to the Statement of Facts ("SOF") set forth in its Memorandum of Law In Support of Its Motion for Decertification of the FLSA Collective Action [Doc No. 75].[1]

## III.   **LEGAL ANALYSIS**

### A.   **SUMMARY JUDGMENT STANDARD.**

Summary judgment is proper and a movant is entitled to judgment as a matter of law where there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(c)*; Celotex*

---

[1] The Statement of Facts will be referenced herein at "SOF" along with the corresponding paragraph number.

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   A "material fact" is a fact that's resolution

affects the outcome of the case; a "genuine issue" is one where the evidence could cause

a reasonable fact-finder to return a verdict for either party.   *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party files its motion, the burden shifts to the nonmoving party

to show specific facts that a genuine dispute exists for trial.   Fed. R. Civ. P. 56(c);

*Anderson*, 477 U.S. at 256.   The moving party is entitled to summary judgment if the

nonmoving party fails to establish the existence of an essential element to his or her case,

and on which the nonmoving party will bear the burden of proof at trial because such

failure of proof "necessarily renders all other facts immaterial".   *Celotex*, 477 U.S. at

322-23.   If the only issues before the Court are questions of law, "summary judgment is

the appropriate vehicle" for resolution.   *Minn. Chamber of Commerce v. Gaertner*, 710

F.Supp.2d 868, 872 (D. Minn. 2010).

**B.      THE FLSA AND THE FLUCTUATING WORKWEEK METHOD.**

**1.      <u>The FLSA Was Enacted To Assist with Widespread Unemployment</u>.**

The FLSA was enacted in 1938 during a period of widespread unemployment and

dismal profits.   *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942).

Overtime pay was designed to incentivize employers to hire more workers, spreading the

work among the unemployed.   *Id*.   Accordingly, the FLSA generally requires payment of

150% of the "regular rate" for all hours over 40 per workweek:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce…for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1)(2010).

The "regular rate" is defined as:

all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include - -

(1)     sums paid as gifts; payments in the nature of gifts made at Christmas time or on other special occasions, as a reward for service, the amounts of which are not measured by or dependant on hours worked, production, or efficiency;

(2)     payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause…and other similar payments to an employee which are not made as compensation for his hours of employment;

(3)     Sums paid in recognition of services performed during a given period if either, (a) both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly…

29 U.S.C. § 207(e)(1) – (3).

Simply, the "regular rate" is "[w]age divided by hours".  *Overnight Motor Transp. Co.*, 316 U.S. 57, n.16; *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) (clarifying the "regular rate" as the "hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed.").

The U.S. Department of Labor ("DOL") enforces and interprets the FLSA. 29 U.S.C. § 204 (2006). The DOL provide employers several methods to pay overtime. *Morton v. Ruiz*, 415 U.S. 199, 231 (1974) ("The power of an administrative agency to administer a congressionally created […] program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress."). Courts are required to accept the DOL's interpretation of the statute as long as it is reasonable. *Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan,* 574 F.3d 644, 649 (8th Cir. 2009) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 844 (1984)).

### 2.   The Fluctuating Workweek Method for the Payment of Overtime.

DOL regulations permit the payment of a fixed salary to employees who work fluctuating hours, so long as they are paid overtime at half the employee's regular rate. 29 C.F.R. § 778.114 (2011). The FWM provides, in relevant part:

> (a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many…and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay…the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensation at the straight time regular rate, under the salary arrangement.

29 C.F.R. § 778.114(a) (emphasis added).

6

The FWM may only be used upon certain conditions:

> (c) The "fluctuating workweek" method of overtime payment may not be used unless the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act, and unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked…Where all the legal prerequisites for use of the 'fluctuating workweek' method of overtime payment are present, <u>the Act, in requiring 'not less than' the prescribed premium of 50 percent for overtime hours worked be paid, does not prohibit paying more</u>. On the other hand, where all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for nonovertime hours, compliance with the Act cannot be rested on any application of the fluctuating workweek overtime formula.

29 C.F.R. § 778.114(c)(emphasis added). If these legal prerequisites are met, an employer may rely on the FWM for FLSA compliance. *Id.*

The FWM is commonly utilized by seasonal employers to provide employees a predictable set salary each pay period regardless of whether they are working five hours during rainy stretches or 50 during sunny ones. *See e.g. Lance v. The Scotts Company*, No. 04 5270, 2005 WL 1785315 (N.D. Ill. 2005); *Haynes v. Tru-Green Corp.*, 507 N.E.2d 945 (Ill. App. Ct. 1987).

## C.   NATURESCAPE LAWFULLY UTILIZED THE FWM.

Naturescape's guidelines for the payment of overtime to its salaried employees (such as branch managers and lawn specialists) under the FWM states[2]:

---

[2] However, as described more fully herein, Naturescape's use of the FWM is voluntary as to its exempt branch managers.

7

PAY SCHEDULE

Salary – Salaried employees are paid 1/26 of yearly salary biweekly.  <u>If the employee works more than 40 hours during a week, they are paid ½ their computed hourly wage for each overtime hour</u>.  This is above the standard salaried overtime designated by the states of Wisconsin and Illinois.  The other half will go towards paid time off during slower times of the year.  The paid overtime will also go towards a paid layoff period equaling the overtime compensation.  Naturescape reserves the right to not award the unpaid overtime due to termination, resignation, or any other reason deemed appropriate by Naturescape Management.  <u>This pay schedule is designed so that the employee will receive his yearly salary and not work more than an average of 40 hours throughout the year</u>.  Therefore, it will not be necessary for employees to file for unemployment compensation during the layoff period.  Employees in their first year will work 1960 hours in a 52 week period. Employees after their first year will work 1920 hours.  If they fall short of these hours, it will reduce their paid time off the following year.

Hourly – Hourly employees are paid their hourly wage for every hour worked.  If the employee works over 40 hours during a week, they are paid 1.5 times their hourly wage for each overtime hour.  Employees are asked to obtain permission from their supervisor for overtime prior to actually working overtime.

INCENTIVES
Naturescape feels strongly about rewarding it's employees monetarily for performing at certain standards and reaching desired goals.  The Branch Manager has a list that will be given to each employee every year listing requirements and monetary awards.

        ***

[Doc No. 1-1] (emphasis added).

1.      <u>**Naturescape Meets the Prerequisites of the FWM.**</u>

The FWM may only be used if the employer meets the legal prerequisites.

Consistent with 29 C.F.R. § 778.114(a), and as described above, Naturescape meets the

8

four-part FWM test, set forth in Paragraph B(2), *supra,* for its lawn specialists and branch managers.

### i.     Plaintiffs' Fixed Salaries Were Sufficiently Large.

Plaintiffs have no facts to dispute that their average hourly earnings fell below minimum wage.   Their biweekly salaries (at the time they quit) were: (a) Soderberg - $1,620; (b) Klym - $1,240; (c) Jadoonath - $ 1,180; (d) Ostlund - $1,1240; and, (e) Rud - $ 1,160.  (SOF 22).   Because Naturescape used a 40 hour work week (instead of the high actual hours total) to determine the regular rate, their average hourly earnings could never fall below minimum wage.   (SOF 25).   By way of illustration, Soderberg worked the most overtime hours (51.5) the payroll week ending April 4, 2009 (based on a two-week payroll).   (August 17, 2011 Affidavit of Todd Furry [Doc No. 77] ("Furry Aff.") ¶ 24).   For that payroll cycle, he was paid $2,062.13 for working a total of 131.5 hours.  (Furry Aff. ¶ 24).   His average hourly earnings was therefore $2,062.13/(80+51.5) = $15.68/hr. (Furry Aff. ¶ 24).   In April 2009, the Federal Minimum Wage was $6.55/hr. (August 18, 2011 Affidavit of Corie Tarara [Doc No. 76] ("Tarara Aff." ¶ 10, Ex. I).[3]

### ii.     Plaintiffs Had A Clear Understanding of The Overtime Pay.

Plaintiffs bear the burden of showing the FWM was incorrectly administered. *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir. 2001).   The employer bears the burden of proving there was a clear and mutual understanding that they would be paid a salary plus overtime at half their regular rate for all hours worked, whether few

---

[3] This is true for all the named plaintiffs, *see* SOF 22.

or many.  29 C.F.R. § 778.114(c); *Ahle v. Veracity Research Co.*, 738 F.Supp.2d 896, 918

(D. Minn. 2010); *Mayhew v. Wells*, 125 F.3d 216 at 219 (4th Cir. 1997).  Plaintiffs admit

they knew they would be paid a salary plus overtime at half their regular rate.  (Soderberg

Dep. 56:25 – 57:1, 67:18-68:4, Ex. 5; Klym Dep., 41:6-11, 51:1-24, Ex. 1; Rud Dep.

19:17-21:8, Ex. 4; Jadoonath Dep. 24:1-3, 25:4-5, Ex. 2; Ostlund Dep. 22:5-15, 29:8-18,

Ex. 4; Oman Dep. 46:12-47:2, 83:13-14, 84:4-9, 20-24, Ex. 9).  Plaintiffs' counsel also

conceded this fact at their conditional certification oral argument:  "We're not saying that

they couldn't grasp this pay plan.  We can concede that they understood this perfectly".

(Tarara Aff. ¶ 11, Ex. J at 22).

Even if Plaintiffs are confused about how their pay was administered, they still

have the requisite understanding if they understood they would be paid a weekly salary:

> [a] challenge to the [employer's] entire pay system cannot proceed on the
> basis of an occasional misstatement or alleged confusion about the
> technical details of administering the fluctuating workweek plan.  If it
> could, nearly every employer who uses this plan would be open to a lawsuit
> based on little more than 'after-the-fact verbal contentions' that employees
> do not understand the plan in all of its particulars . . . The regulation
> requires a clear mutual understanding of only the basic message that
> employees will be paid a fixed amount of straight-time weekly pay if they
> work any regular hours in the week.  The regulation does not require an
> understanding of anything more.

*Griffin v. Wake County*, 142 F.3d 712, 717 (4th Cir. 1998) (citing *Monahan v. County of*

*Chesterfield*, 95 F.3d 1263, 1275 (4th Cir. 1996)); *see also Valerio v. Putman Associates,*

*Inc.*, 173 F.3d 35, 40 (1st Cir. 1999).

### iii.   Plaintiffs Were Paid Their Full Salary.

Plaintiffs were paid their full salary for all weeks in which they performed any work (except prorated the first and last week of their employment).  (SOF 25).   The FWM permits pro rata salary for the first and last weeks of employment.  *See* U.S. DOL Field Operations Handbook (3/24/67) § 32b04b(c) (attached to Tarara Aff. ¶ 13, Ex. L). Plaintiffs admit they were paid their salary regardless of how many hours they worked. (SOF 21).  For example, Soderberg worked a total of 51 hours the two work weeks with payroll ending February 9, 2008 (23.5 hours one week and 27.5 hours the next), and yet was paid his full salary of $1,180 without deduction. (SOF 97).  Another example, Rud worked 46 hours one week and 0 hours the next week for payroll week ending August 23, 2008.  He still earned his bi-weekly salary of $1,160 plus 6 hours of overtime at $47.13 for a total of $1,207.13.  (SOF 109).

### iv.   Plaintiffs Were Paid More For Overtime Hours.

Plaintiffs always received additional compensation for overtime hours.  (SOF 28). Specifically, they were paid their salary plus their salary divided by 40 hours for all overtime hours: (a) Soderberg - $10.12/hr (SOF 99); (b) Klym - $7.75 (SOF 102); (c) Jadoonath - $7.38 (SOF 106); (d) Ostlund - $9.75 (SOF 115); and (e) Rud - $7.25 (SOF 111).   Together with the above three prerequisites, Naturescape meets the legal prerequisites for the use of the FWM for the payment of overtime under the FLSA, and Plaintiffs have no facts to suggest otherwise.

11

2.     <u>**Using A Higher Regular Rate Under the FWM Is Lawful**</u>.

Plaintiffs claim Naturescape's use of the FWM is destroyed because it calculates the regular rate based on a 40 hour workweek instead of actual hours worked.  (SOF 25). This method is allowed by 29 C.F.R. § 778.114(a), since the employee actually receives more per overtime hour than legally required.  An employer is required to pay 50% for overtime hours, but is "not prohibit[ed] [from] paying more".  29 C.F.R. § 778.114.

On October 31, 2002, the DOL issued the following opinion, providing it is lawful to base the regular rate on a 40 hour workweek:

> We note that dividing the salary by 40 rather than the actual number of hours worked will always result in a higher regular rate than that resulting from diving the salary by the actual number of hours worked, because in overtime weeks the number of hours worked will always be greater than 40. Thus, paying one-half of the regular rate achieved by dividing the salary by 40 causes the employees to receive more compensation than if the regular rate were computed by dividing the salary by the actual number of hours worked.
>
> Where employees are compensated pursuant to a fixed salary for fluctuating hours, the FLSA does not prohibit an employer 'from paying more' than is required by the Act.  29 C.F.R. 778.114(c)….the proposed method of computing the regular rate by dividing the salary by 40, and paying one-half that amount for all overtime hours, is consistent with the fluctuating work week method of computing overtime under the FLSA.

Letter from Barbara R. Releford, Office of Enforcement Policy Fair Labor Standards Team, Department of Labor Opinion Letter, 2002 WL 32255314 (Oct. 31, 2002).  *See also* U.S. DOL Field Operations Handbook § 32b04b(a) (Tarara Aff. ¶ 13, Ex. L); *Mitchell v. Abercrombie & Fitch*, 428 F.Supp.2d 725, 744–745 (S.D. Ohio 2006). Accordingly, using this higher rate does not defeat the FWM.

### 3. <u>Nondiscretionary Bonuses Are Allowed Under the FWM.</u>

Plaintiffs allege it is unlawful for Naturescape to pay non-discretionary bonuses under the FWM as the payments change their regular rate – and thus their salary is not "fixed". [Doc No. 1 at ¶ 25]. Yet, the FWM does not prohibit paying more than then FLSA requires. 29 C.F.R. § 778.114(c). For example, in *Lance v. Scotts Co.*, the plaintiff, Steven Lance ("Lance") was a lawn technician responsible for providing seasonal lawn services to customers in his territory. *Lance v. Scotts Co.*, 2005 WL 1785315 at *1. Similar to Plaintiffs, Lance was paid under the FWM and received a base salary, plus production bonuses and overtime (computed at one-half the regular rate). *Id.* The *Lance* court upheld the use of the FWM, even though Lance's production bonus fluctuated his base hourly rate for overtime calculation purposes, based on application of 29 C.F.R. §§ 778.117-778.118. *Id.* at * 6.

Similarly, in addition to their salary and overtime, Naturescape provides employees with several types of bonuses. Branch managers and lawn specialists receive year-end bonuses based on the profitability of the branch. (SOF 32). Lawn specialists also receive production bonuses that run for five, six-week increments. (SOF 34). Further, for each overtime hour an employee works, an equal amount may be paid out as paid time off during the winter months when there is no work (the "Winter Pay"). [Doc No. 1-1]; (SOF 41-44). Unlike the production bonuses for the lawn specialists, Winter Pay is a completely contingent. [Doc No. 1-1]; (SOF 44). Employees must be employed

at the time Winter Pay is paid out (*i.e.,* if they quit prior to the winter months, the do not receive any Winter Pay).  (*Id.*).

Thus, Plaintiffs' interpretation of the FWM is incorrect.  Plaintiffs received their known salary every two weeks, plus overtime, plus bonuses.  However, Naturescape never made any deductions from their salary, which they always received, (as evident from the payroll records), and thus, the salary was fixed.

### 4.  The Prepayment or Overpayment of Wages Does Not Defeat the FWM.

Plaintiffs allege that even if the FWM allows bonuses, Naturescape failed to add the bonus wages back into the weeks to which the production bonuses were attributed, for purposes of re-calculating the regular rate for those weeks.  [Doc No. 1-1 at ¶ 25(d)]. Thus, Plaintiffs argue the corresponding additional overtime compensation is due.  *Id*. However, Plaintiffs ignore the fact they were paid more per overtime hour than required as Naturescape used 40 hours instead of actual hours when determining the regular rate for overtime calculations.  (SOF  25).

Where an employer's method of calculating overtime results in the overpayment of wages due that pay period, it is essentially pre-paying the employee for subsequent shortfalls they would receive.  *Singer v. City of Waco*, 324 F.3d 813, 828 (5th Cir. 2003). In *Singer*, the court held that as employees were paid more per overtime hour than required in some weeks, which made up for other weeks where they were paid less, they did not suffer any damages.  *Id*.  This is consistent with the position taken by the U.S. DOL which allows for a later-paid production bonus to be credited to the employer for

14

payments made to an employee to satisfy the minimum wage requirement.  *See* U.S. DOL Field Operations Handbook (12/9/1988) § 30b07 (attached to Tarara Aff. ¶ 12, Ex. K).  This is also consistent with the enforcement purpose of the FLSA – to make employees whole – not provide a windfall.  *Lupien v. City of Marlborough*, 387 F.3d 83, 88 (1st Cir. 2004); *Kohlheim v. Glynn Co.*, 915 F.2d 1473 (11th Cir. 1990).

### 5.   <u>Deductions On Timesheets For Non-Working Hours Is Lawful.</u>

Plaintiffs also argue that because they were told to record time <u>not</u> worked (such as lunches and other breaks) on their timesheets, they were underpaid.  Specifically, Plaintiffs allege that because they did not count those hours as hours worked towards the 40 hours, they received less overtime payments.  Plaintiffs are allowed to work hours they desire.  (SOF 13).  The concept is the lawn specialist has a certain goal for applications per week, and it is up to them how/when they meet that goal.  (*Id*.).

The FLSA provides that an employer does not need to pay an employee for time not worked, including bona fide meal times where the employee is relieved from performing duties.  29 C.F.R. § 785.19.  In fact, the majority of lawn specialists do not record a time deduction for meals, as they prefer to eat while they are traveling from one customer to another, and thus, are paid for that time.[4]  (SOF 13).

---

[4] Plaintiffs' argument is contrary to most wage and hour cases about forcing the employee to work though breaks. See e.g. *Brennan v. Qwest Commc'n Int'l, Inc.*, Civil No. 07-2021 (ADM/JSM), 2008 WL 819773, at *2 (D. Minn. Mar. 25, 2008); *Saleen v. Waste Mgt., Inc.,* 649 F.Supp.2d 937, 940 (D. Minn. 2009).  Naturescape, on the other hand, allows flexibility and the ability to decide whether they want to stop to take an unpaid lunch break, or eat as they travel from one customer to another and get paid for that time.

15

**D.      BRANCH MANAGERS ARE EXEMPT FROM OVERTIME.**

In the alternative, even if Naturescape improperly used the FWM or underpaid Plaintiffs, Branch Managers fall under one or more of the exemptions to the overtime requirements of the FLSA, as described below, and thus, they should be dismissed.

**1.      Who Must Be Paid Overtime.**

The FLSA provides that not all employees are legally entitled to overtime compensation.  The FLSA specifically exempts, "any employee employed in a bona fide executive, administrative, or professional capacity, or in the capacity of outside salesman".  29 U.S.C. § 213(a)(1)(2004).  Whether an employee is exempt "must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations".  29 C.F.R. § 541.2 (2004).  In order to determine whether an employee is exempt from overtime, the Court must make a fact-intensive inquiry into the individual employee's daily activities and responsibilities and then apply the DOL's requirements.  *See Reich v. Avoca Motel Corp.*, 82 F.3d 238, 240 (8th Cir. 1996) ("the amount of time devoted to [administrative] duties, and the significance of those duties, present factual questions") (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)).  For the reasons set forth below, branch managers meet one or more of the FLSA exemptions, and are not entitled to overtime compensation.

**2.      The Executive Exemption.**

An employee satisfies the FLSA's executive exemption test if:  (1) the employee is compensated at a salary of not less than $455 per week; (2) the employee's primary

16

duty consists of management of the employer's enterprise; (3) the employee's job duties require them to customarily and regularly directs the work of two or more other employees; and, (4) the employee has the authority to hire or fire other employees.  29 C.F.R. § 541.100(a) (2011).

### i.     Branch Managers Make At Least $455 Per Week.

Plaintiffs have no facts to dispute that Naturescape's branch managers were paid significantly higher than $455 per week.  (SOF 61).  Therefore, Naturescape has met the first requirement of the executive exemption.

### ii.     A Branch Manager's Primary Duty is Management.

Under the regulations, an exempt employee's "primary duty" is defined as "the principal, main, major or most important duty that the employee performs."   29 C.F.R. § 541.700(a) (2011).   Determining whether an employee's primary duty is management depends on "all the facts in a particular case".  *Auer v. Robbins*, 65 F.3d 702, 712 (8th Cir. 1995) (citing 29 C.F.R. § 541.103 (2011)).  Generally, "if an employee spends over 50% of his time on managerial duties, his primary duty is management".  *Id*. Nevertheless, time alone is not the only test and cases have held "the person 'in charge' of a store has management as his primary duty, even though he spends the majority of his time on non-exempt work and makes few significant decisions".  *Murray v. Stuckey's Inc.*, 939 F.2d 614, 618 (8th Cir. 1991), (citing *Donovan v. Burger King Corp.*, 672 F.2d 221, 227 (1st Cir. 1982)).

The factors to consider in determining whether the primary duty is management are:

> (1) the importance of managerial duties compared to other duties, (2) the frequency of discretionary powers, (3) the employee's freedom from supervision, and (4) the relationship between the employee's salary and wages paid to other employees for the kind of nonexempt work performed by the supervisor.

*See Smith v. Heartland Automotive Services, Inc.*, 418 F.Supp.2d 1129, 1135 (D. Minn. 2006); 29 C.F.R. § 541.700(a).

### a. Branch Managers Managerial Duties Are of Key Importance to the Position.

To meet the primary duty test, the branch manager's managerial duties must be more important to the position than the non-managerial duties. 29 C.F.R. § 541.700(a). The supervision of other employees is clearly a management duty. 29 C.F.R. § 541.102. In fact, "management", as defined by the regulations, includes activities such as interviewing, selecting, and training employees; setting and adjusting hours of work; directing their work; appraising productivity and efficiency; handling employee complaints; and disciplining employees. *Id.* Naturescape's branch manager duties revolve around the type of managerial duties proscribed by the regulations, specifically supervision of other employees. (SOF 45-60). The duties the branch managers perform (such as hiring, firing, disciplining and training) are exactly the types of duties the regulations specifically define as "managerial". To the extent a branch manager performs

18

non-managerial duties (*i.e.,* lawn applications and tree/shrub service), it is not key to the position.

> **b.    Branch Managers Frequently Use Discretionary Powers and Have Relative Freedom From Supervision.**

Courts typically analyze the second and third requirements of the primary duty test together: whether an exempt employee frequently uses discretionary powers and has the relative freedom from supervision.  *Smith*, 418 F.Supp. at 1136; 29 C.F.R. § 541.700(a). The *Smith* court looked to the Eighth Circuit which defined the following three factors to use when analyzing these two requirements:

> First, the implementation of "standardized procedures and policies" does not necessarily eliminate the discretion of an on-site manager of "an isolated store"; second, "active supervision and periodic visits by a regional manager do not eliminate the day-to-day discretion of the on-site store manager"; and third, tasks such as hiring other employees, scheduling other employees, training and disciplining other employees, ordering store inventories, and handling customer complaints are supportive of the applicability of the executive exemption.

*Id*. (citing *Murray*, 50 F.3d at 569-70).

First, although branch managers are required to follow "standardized" company policies, each manager has the authority and discretion to administer the policies within branch.  (SOF 46–48).  This is similar to the *Murray* case in which the plaintiffs were required to follow established procedures and policies, but were still responsible for administrating these policies in their stores.  Notably, "most if not all nationwide companies with multiple outlets establish standardized procedures and policies to guide individual store managers.  This practice may circumscribe but it does not eliminate the

discretion of the on-site manager of an isolated store who is responsible for day to day operations". *Murray*, 50 F.3d at 569.

Second, branch managers have complete autonomy to run their branches. In fact, the Regional Manager (a branch manager's supervisor) may only visit a branch maybe once a month, if that. (SOF 12). The infrequency of these visits illustrates the branch manager's autonomy. Regardless, even "active supervision and periodic visits by a regional manager do not eliminate the day-to-day discretion of the on-site store manager". *Murray*, 50 F.3d at 569.

Third, the undisputed evidence shows that the branch managers were responsible for allocating routes, work, meeting times, training and approving or rejecting vacation time requests, all on a daily basis. (SOF 47–48, 53–54, 60, 74). These types of the day to day operation task that the branch managers were responsible for (e.g., hiring, scheduling, training and discipline) all supportive of the applicability of the exemption. *Murray* 50 F.3d at 569.

### c. Branch Managers Were Paid A Higher Salary.

The fourth and last requirement of the primary duty test is that the branch managers' salary must be significantly higher than compared to the wages paid to other employees for the same kind of non-exempt work. 29 C.F.R. § 541.700(a). For example, Soderberg, a branch manager, was paid $1,620 for week ending August 12, 2009. (Tarara Aff. ¶ 3, Ex. B at DEF 945). Jadoonath, a lawn specialist, reporting to Soderberg was paid $1,180 ($440 or 27% less) for that same two week period. (SOF 22).

20

Soderberg was a lawn specialist and received an increase in pay when he was promoted to branch manager. (SOF 45, 68). This is consistent with others who have been promoted from lawn specialist to branch manager, such as opt-in plaintiff, Scott Oman. (SOF 68).

### iii. Branch Managers Direct the Work of Two or More Employees.

The third executive exemption requirement is that the branch manager supervise at least two or more employees on a "customary" and "regular" basis. 29 C.F.R. § 541.104. The DOL has established a "bright-line rule" that "any number of part-time employees will be the equivalent of two full-time employees working 40-hour weeks, so long as the total number of hours supervised exceeds 80." *Perez v. Radioshack Corp.*, 552 F.Supp.2d 731, 736 (N.D. Ill. 2005).

This rule was applied in the *Smith v. Heartland Automotive Services, Inc.* case where the court concluded there was no genuine issue of material fact as to whether the Plaintiffs were customarily and regularly supervising at least two or employees because the payroll records were always well over the 80 hour minimum. *Smith,* 418 F.Supp.2d at 1140. The case here is analogous; for each week a branch manager worked, there were always at least two or more employees (or full-time equivalent employees) working during that pay period (a combined 80 hours per week). (SOF 11, 66, 72). With the exception of a new branch which is starting up, at each branch, there are always more than two employees working and, therefore, the first part of the test is met. (SOF 11).

Naturescape's branch managers spend 80% of their time supervising employees.  (SOF 67, 75).

As for the second part of the test, whether a branch manager was "customarily and regularly" supervising these employees is defined by regulation as "a frequency which must be greater than the occasional but, which of course may be less than constant".  29 C.F.R. § 541.107(b).  This definition is explained further by the courts by looking to the time the exempt employee spent supervising employees.  *Perez*, 552 F.Supp.2d 731 at 741.  In *Murray*, the Eighth Circuit noted that if an employee spent 98.2 percent of his or her time supervising two or more employees, this amount "by any definition" is customary and regular.  *Murray*, 50 F.3d at 568.

### iv.    Branch Managers Hire and Fire Lawn Specialists.

The final requirement to meet the executive exemption is the branch managers must have hiring and firing authority over the employees they supervise.   29 C.F.R. § 541.100(a).   The record is clear that branch managers had hiring and firing authority with regard to the employees at his or her branch, including the lawn specialists.  (SOF 47).   In fact, several of the plaintiffs were hired by Soderberg.   (SOF 64, 73).  Accordingly, branch managers qualify for an executive exemption and are not entitled to overtime under the FLSA.

### 3.    The Administrative Exemption.

An employee satisfies the FLSA's administrative exemption if (1) the employee is compensated at a salary of not less than $455 per week; (2) the employee's primary duty

22

is office or non-manual work that is directly related to the management or general business operations of Naturescape or its customers, and (3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to manners of significance.   29 C.F.R. § 541.200(a).   As described under the executive exemption above, there is no dispute the branch managers made at least $455 per week, therefore only the branch managers' primary duties under (2) and (3) are addressed below. Additionally, whether a duty is primary under the administrative exemption follows the same primary duty test found under the executive exemption:

> (1) the importance of the exempt duties as compared to other duties, (2) the frequency of time spent performing exempt work, (3) the employee's freedom from supervision, and (4) the relationship between the employee's salary and wages paid to other employees for the kind of nonexempt work performed by the supervisor.

29 C.F.R. § 541.700(a).

    **i.**     **Branch Managers' Primary Duties Are Office Duties Related to Naturescape's Business Operations And Require the Exercise of Discretion and Independent Judgment.**

Branch manager's meet the administrative exemption test because, at the time they open a new branch, the primary duty of the position is office work that is directly related to the management or general business operations of Naturescape and requires the exercise of discretion.   29 C.F.R. § 541.200(a)(2)-(3).

    **a.**     **Branch Managers Administrative Duties Are of Key Importance to the Position at the Time the Branch is Opened.**

The regulations provide the following example of an administrative employee:

> An employee who leads a team of other employees <u>assigned to complete</u> <u>major projects for the employer</u> (such as purchasing, selling or closing all or part of the business, negotiating a real estate transaction or a collective bargaining agreement, or designing and implementing productivity improvements) generally meets the duties requirements for the administrative exemption, even if the employee does not have direct supervisory responsibility over the other employees on the team.

29 C.F.R. § 541.203(c)(emphasis added).

This is analogous to the type of work branch managers perform when they open a new branch and is key to the success of the new branch.  (SOF 69–70).  The major project the branch manager is responsible for is the opening of the branch itself.  (SOF 69–70).  The remaining factors required to meet the primary duty test (the frequency of time spent performing exempt work, the employee's freedom from supervision, and the relationship between the employee's salary and wages paid to other employees for the kind of nonexempt work performed by the supervisor) are analyzed under the executive exemption above.

### 4.    **The Combination Exemption.**

Alternatively, employees who perform a combination of exempt duties also may qualify for the exemption.  29 C.F.R. § 541.708 (2011).  This exemption addresses situations where "an employee performs duties that fall under more than one individual exemption, none of which separately represents her primary duty . . . In other words, the combination exemption provides a mechanism for cobbling together different exempt duties for purposes of meeting the primary duty test".  *Schmidt v. Eagle Waste &*

*Recycling, Inc.*, 598 F.Supp.2d 928, 937 (W.D. Wis. 2009) (citing *IntraComm, Inc. v. S. Bajaj*, 492 F.3d 285, 294 (4th Cir. 2007)).

> **i.     Branch Managers Meet the FLSA's Combination Exemption Under a Combination of the Salesperson and Executive (or Administrative) Exemptions.**

A salesperson meets the exemption requirements if: (1) their "primary duty" consists of making sales or obtaining orders or contracts for services for which a consideration will be paid by the client or customer; and (2) they are customarily and regularly engaged away from the employer's place ore places of business in performing such primary duty.  29 C.F.R. § 541.500 (2011).  The term "primary duty" means the principal, main, major or most important duty that the employee performs.

In the alternative to the executive and administrative exemptions, branch managers meet the definition of the combination exemption under the FSLA.  In addition to their management of the branch (or, in the alternative, administrative duties at the branch) branch managers spend a large portion of their time making sales and obtaining customer orders and contracts for services.  (SOF 70).  Branch managers will travel to perform estimates for new customers and sell the services, and will attend to unhappy customers to maintain their business.  (SOF 47).  In fact, the sales functions are so essential to the branch manager's position that their annual bonus is reliant upon the branch's meeting its sales goals – not production.  (SOF 32, 36).  For new branches, the branch manager is responsible for all the sales to new customers.  (SOF 70).  In fact, when a new branch is opened up, the branch manager performs the sales function exclusively until they do so

well a job that lawn specialists needs to be hired, and thus they start to transition to more management of those lawn specialists.   (SOF 50, 70).   Accordingly, between their management and sales functions, branch managers are not entitled to overtime.

## E.      ANY VIOATION OF THE FLSA WAS NOT WILLFUL.

A FLSA violation is subject to a two-year statute of limitations.  29 U.S.C. § 255. This limitation, "may be extended to three years of the employer's violation is willful, i.e., the employer either knew or showed reckless disregard for the matter of whether the conduct was prohibited by statute".  *See Smith*, 418 F.Supp.2d at 1141 (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).   Plaintiffs argue that Naturescape willfully violated the FLSA, and as such, bear the burden of proving the violation is willful.  *Smith*, 418 F.Supp.2d at 1141 (citing *Bankston v. State of Ill.*, 60 F.3d 1249, 1253 (7th Cir. 1995)).  An employer's action should not be considered willful if it acted unreasonably, but not recklessly.  *Lockaby v. Top Source Oil Analysis, Inc.*, 998 F.Supp. 1469, 1471 (N.D. Georgia 1998) (no willful violation where the plaintiff only argued the employer acted with reckless disregard rather than with actual knowledge). Plaintiffs have no facts to support that Naturescape recklessly and willfully violated the FLSA.

Naturescape has been owned by the same two individuals for over 25 years.  (SOF 7).  During that time, they have had thousands of employees.  (SOF 7).  Of those thousands of employees, only nine have complained to the Wisconsin Department of Workforce Development concerning the overtime payments.  (SOF 17).  Each time,

26

Naturescape was told it was properly paying its employees. (SOF 17). Further, Naturescape has had a compliance audit in Illinois.[5] Again, it was also told they were paying their employees properly. (SOF 18). However, recently, the same Illinois auditor reversed his decision and has determined otherwise – that new determination is currently being appealed. (SOF 18). In addition, three Minnesota employees have brought conciliation court claims regarding alleged wages due. (SOF 19). However, two of those were seeking payment of their discretionary Winter Pay (after they had quit) and the third was Soderberg, who withdrew his claim at the hearing in order to bring this collective action. (SOF 19).

Additionally, the DOL conducted an investigation. Recently, it concluded that Naturescape owed backwages to some employees based on its failure to add certain bonuses back into their wages to determine the regular rate. (SOF 84). The DOL determined Jadoonath was owed $296.74 for the time period of 04/25/2009 to 12/18/2010. However, the DOL did not identify Soderberg, Klym, Ostlund or Rud as being due any monies for the work period of 04/25/2009 to 12/18/2010. (SOF 85). Nonetheless, Naturescape <u>voluntarily</u> paid its employees backwages through 2008 under the same formula dictated by the DOL.

---

[5] The relevant portions of the Illinois Minimum Wage Law and the FLSA are "coextensive"; if an employer's method of paying its employees satisfies the one, it necessarily satisfies the other. *Lance v. The Scotts Co.*, 2005 WL 1785315 at *3, n. 2 (N.D. IL 2005) *citing Condo v. Sysco Corp.*, 1 F.3d 599, 601, n. 3 (7th Cir. 1993).

Naturescape's settlement with the DOL was not an admission of liability, but rather a business decision.  The DOL did not give Naturescape credit for overpayments. (SOF 84).  Importantly, the DOL did not find that Naturescape unlawfully used the FWM.  (SOF 84–87).  To the contrary, the DOL accepted Naturescape's use of the FWM, and only asked they go back two years to pay backwages – not three.  (SOF 85). The DOL looked at all the employees who were paid overtime and a bonus – and did not question whether they were required to be paid overtime under the FLSA at all.  (SOF 87).  Even had the DOL determined Naturescape misclassified an employee and did not pay overtime, such determination does not necessarily suggest the employer was in error by its classification exempt.  *Smith*, 418 F.Supp.2d at 1142.  Accordingly, any violation of the FLSA was unintentional and certainly not willful.

## F.    THE FWM IS USED TO CALCULATE DAMAGES.

In the alternative, even if Naturescape violated the FLSA in its payment of overtime to Plaintiffs, the measure of damages is not time and one-half for all overtime hours, but rather, the half time.  *Ahle*, 738 F.Supp.2d at 918 ("Under the FWW method, 'a successful plaintiff receives overtime compensation at only half his or her regular rate (instead of the usual one-and-a-half times his or he regular rate).'") (citing *Ackerman v. Coca-Cola Enters., Inc.*, 179 F.3d 1260, 1262-63 (10th Cir. 1999) (citing 29 C.F.R. § 778.114)); *see also* Expert Report of Alexander J. Passantino attached to Tarara Aff. ¶ 14, Ex. M; Letter from Joseph P. Mcauliffe, Director, Division of Minimum Wage and Hour Standards, Wage and Hour Opinion Letter, 1973 WL 335242 (Feb. 26, 1973); Letter

from Maria Echaveste, Administrator, Wage and Hour Division Opinion Letter, 1996 WL 1005216 (July 15, 1996).  29 C.F.R. § 778.114 provides that in order to determine the overtime due, the "salary is divided by number of hours worked, the resulting amount is divided by half and that rate is multiplied by the number of hours worked in excess of 40 to arrive at the overtime compensation due to the employee".

Therefore, the formula set out in the regulation follows a three-step calculation for determining overtime compensation due:

Step 1: Weekly Salary/Total Hrs. Worked That Week = Resulting Amount
Step 2: Resulting Amount/2 = Half Time Rate
Step 3: Half Time Rate x Overtime Hrs. Worked That Week = Overtime
          Compensation Due

For example, applying the formula for the week ending July 12, 2008, Jadoonath worked 52.5 hours and had a bi-weekly salary of $1160 ($580 weekly).  Thus, applying the three steps of the formula from the DOL regulation, the overtime compensation due to Jadoonath for the week ending July 12, 2008 was $69.13 (calculated as follows):

Step 1: $580 (Weekly Salary)/52.5 (Total Hrs. Worked) = $11.05
          (Resulting Amount)
Step 2:  $11.05 (Resulting Amount)/2 = $5.53 (Half Time Rate)
Step 3:  $5.53 (Half Time Rate) x 12.5 (Overtime Hours Worked) =
$69.13[6]

Even the DOL, in its settlement with Naturescape, did not find they owed time and one-half for all overtime hours.  Thus, to use such a method for damages now would

_____

[6] Notably, because, in Step 1, Naturescape always divided the weekly salary by forty hours (rather than the total hours worked in the week), each week the plaintiffs were paid more than they were owed.  In this example, Plaintiff Jadoonath was actually paid $90.63 in overtime compensation ($21.50 more than the $69.13 he was owed) ($580/40 = $14.50/2 = $7.25 x 12.5 = $90.63).  (SOF 25).

result in a windfall for plaintiffs who would have been paid twice for the overtime hour – once in their salary and again with the overtime.  This is neither just nor equitable.

## G.  INDIVIDUAL PLAINTIFFS SHOULD BE DISMISSED.

In the alternative, should this Court determine Naturescape improperly paid Plaintiffs and not decertify the class, numerous plaintiffs should be dismissed.[7]  Those plaintiffs who did not work overtime should be dismissed as they cannot have an overtime claim.  (SOF 91).  Further, plaintiffs who did not earn a bonus should be dismissed, as Plaintiffs' claim rests on the receipt of a bonus.  (SOF 92).  Plaintiffs who cashed the check pursuant to the DOL settlement for backwages due have been compensated and should be dismissed.  (SOF 88).  Employees who only worked overtime and received bonuses more than two years ago should be dismissed as there is no willfulness, as described above.

Rud has not filed consent to opt-in.  Under the FLSA, "a potential plaintiff's claim will be included in a collective action *only* if he express opts *in* to the action".  *Parker v. Rowland Express, Inc.*, 492 F.Supp.2d 1159, 1163 (D. Minn. 2007) (citing 29 U.S.C § 216(b) (2008) (emphasis in original)).  Accordingly, his claim should be dismissed.

## H.  AS PLAINTIFFS CANNOT SURVIVE SUMMARY JUDGMENT; THERE IS NO CLAIM FOR ANYONE "SIMILARLY SITUATED".

Based on the above, Plaintiffs cannot survive summary judgment.  Therefore, no claim may be asserted for similarly situated employees.  *Lance v. The Scotts Company*,

---

[7] For the judicial economy and efficiency sake, Naturescape will not reiterate its arguments here with respect to why certain opt-ins should be dismissed as they are set forth in its Motion to Decertify the FLSA Collective Action.

No. 04 5270, 2005 WL 1785315 (N.D. Ill. 2005) (citing *Jastremski v. Safeco Ins. Cos.*, 243 F.Supp2d 742, 745 n. 1 (N.D. Ohio 2003)) ("An FLSA plaintiff that cannot withstand summary judgment 'may not assert a claim under the FLSA for 'similarly situated' employees.'"); *see also Graffy v. Kewel Foods Stores*, No. 83 C 9313, 1985 WL 3352, at *2 (N.D. Ill. Oct. 29, 1985) (because "named plaintiffs' actions are concluded by summary judgment, their class action is also too insubstantial to be certified.").

## VI.   <u>CONCLUSION</u>

Based upon the foregoing, the Court should grant Naturescape's Motion in its entirety.

Date: August 18, 2011

By  s/ Corie J. Tarara
Gregory L. Peters (0289401)
Corie J. Tarara (0349197)
Emily L. Ruhsam (0388890)
SEATON, PETERS & REVNEW, P.A.
7300 Metro Boulevard, Suite 500
Minneapolis, Minnesota 55439
Tel. (952) 896-1700
Fax (952) 896-1704
gpeters@seatonlaw.com
ctarara@seatonlaw.com
eruhsam@seatonlaw.com