UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Cory Soderberg, Adam Klym, Joe Jadoonath, Nathan Ostlund, and Ryan Rud, on behalf of themselves and all other individuals similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Naturescape, Inc.,<br><br>Defendant. | Civil No. 10-3429 (PAM/JJG)<br><br><br><br>REPORT AND RECOMMENDATION |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter came before the undersigned on September 6, 2011, for a hearing on Plaintiffs' Motion to Extend Opt-In Period (Doc. No. 61). Thomas J. Conley and John A. Klassen appeared on behalf of Plaintiffs Cory Soderberg, Adam Klym, Joe Jadoonath, Nathan Ostlund, and Ryan Rud, and the conditionally certified class. Gregory L. Peters appeared on behalf of Defendant Naturescape, Inc.

I.   BACKGROUND

   A.   Plaintiffs' Motion for Conditional Certification and Relevant Deadlines

In May 2011, Plaintiffs moved to conditionally certify this case as a collective action under the Fair Labor Standards Act (FLSA). The Honorable Paul A. Magnuson, United States District Judge, granted the motion on June 20, 2011, and gave the parties ten days to stipulate to the parameters of the judicial notice. On July 5, 2011, Judge Magnuson issued a Notice of Pendency of Lawsuit, describing the conditional class as all present and former branch managers and lawn specialists who worked for Defendant from July 15, 2008 to the present. The last date

for individuals to opt into the suit was established as August 15, 2011. As of that date, Plaintiffs had filed eighty-three consent forms.

As the schedule presently provides, discovery of potential class members who filed a consent form must be completed by October 1, 2011. Cross motions for summary judgment and Defendant's motion to decertify the class have been filed and are scheduled to be heard on September 29, 2011. A trial notice has been issued for December 1, 2011.

### B. The Department of Labor Investigation and Defendant's Letters

In October 2010, two months after this case was filed, the Department of Labor (DOL) notified Defendant's President, Todd Furry, of its intent to audit Defendant's payroll records. Mr. Furry retained Robert Schreiber, a Wisconsin lawyer, to represent Defendant in that matter. After examining Defendant's records, the DOL concluded that Defendant had not properly paid overtime on production and nondiscretionary bonuses in 2009 and 2010. There is no evidence that Defendant told the DOL about this lawsuit. It is also not known when Defendant's lawyer in this lawsuit learned of the DOL investigation.

On June 29, 2011—nine days after Judge Magnuson granted conditional certification and six days before judicial notice was authorized—Defendant sent a letter, DOL Form WH-58, waiver and release, and check for back wages to 117 current and former employees. For 99 additional individuals who were owed less than $20 in back wages, Defendant sent only a check and waiver. At this point, Defendant had not advised Plaintiffs or the Court of the DOL investigation or of its intention to send the unilateral communications.

In the June 29, 2011 letter, Defendant reiterated the DOL findings, but also included its position that its method of computing overtime was more generous than required by law. Defendant stated it was voluntarily making additional overtime payments for 2009 and 2010, as

well as 2008, to avoid "the cost and distraction of potential litigation related to wages." (Conley Aff. Ex. B at 1, Aug. 23, 2011; Doc. No. 84-2.) The letter warned the recipient that acceptance of the payment "means that you have given up the right you have to bring suit on your own behalf for the payment of such unpaid wages and other compensation." (*Id.* at 2.) However, the letter did not mention the existence of this lawsuit. The letter was signed by Mr. Furry in his capacity as President of Naturescape. Plaintiffs and their counsel first learned about the communications from one of the named Plaintiffs in this case, Joe Jadoonath, who received a letter and check from Defendant.

Of the 216 individuals who received correspondence from Defendant, 148 cashed their checks. Plaintiffs believe most, if not all, of these 148 individuals are eligible to opt into the class. Eight of the opt-in plaintiffs have cashed their checks. Two opt-in plaintiffs have submitted declarations averring confusion caused by the letter.

### C.    Plaintiffs' Request for a Case Management Conference

On July 13, 2011, Plaintiffs' counsel filed a letter requesting a case management conference to address an extension of pretrial deadlines, in part because of the June 29, 2011 letters. In response, Defendant's counsel explained that the letters had been sent in connection with the DOL investigation, not the instant case. Defendant's counsel also emphasized that the letters were sent by Defendant, not by him, and that Defendant was represented by a different attorney in the DOL matter. On July 19, 2011, this Court informed the parties by letter that there would be no changes to the current schedule, per the direction of Judge Magnuson's chambers, and that any extensions would be addressed after the September 29 hearing.

### D. Plaintiffs' Present Motion

On August 12, 2011, Plaintiffs filed their motion to extend the opt-in period and for additional relief. Plaintiffs contend that the June 29, 2011 correspondence concealed material facts, caused confusion, and interfered with the judicial notice of this action. As remedial relief, Plaintiffs ask for the names, addresses, telephone numbers, and email addresses of all individuals to whom the letters were sent. Second, Plaintiffs ask for permission to send corrective notices to those individuals, with Defendant paying for the associated costs, and for an extension of the opt-in period to thirty days from the date the corrective notices are mailed. Finally, they ask for a ruling that any individual who cashed a check or signed a waiver is not prevented from opting into the class.

In response, Defendant denies that the letters were misleading or confusing and implies that the DOL approved the contents. Defendant also notes that the Court previously declined to consider this dispute in the context of a request for a case management conference.

## II. DISCUSSION

As an initial matter, the Court's previous decision not to hold a case management conference does not bar the Court from now considering Plaintiffs' motion. Although Defendant's June 29, 2011 letter was mentioned in Plaintiffs' letter request, the dispute was not comprehensively briefed, and Plaintiffs are presently asking for additional relief.

As a general rule, "a defendant in a § 216(b) action is not categorically forbidden from communicating with prospective opt-in plaintiffs." *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1225 (S.D. Ala. 2008); *see also Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1085 (C.D. Cal. 2002). This includes making settlement offers. *Goody v. Jefferson County*, No. CV-09-437-E-BLW, 2010 WL 3834025, at *2 (D. Idaho Sept. 23, 2010). However, the

defendant cannot misrepresent facts about the case, discourage an individual from opting into the lawsuit, or undermine the court's notice or cooperation with counsel. *Kerce v. W. Telemktg. Corp.*, 575 F. Supp. 2d 1354, 1367 (S.D. Ga. 2008); *Parks*, 235 F. Supp. 2d at 1085. "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). This duty extends to collective actions. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989).

Here, the Court finds that Defendant's letter was misleading, confusing, and damaging to the judicial notice of the action. To begin, Defendant omitted any mention of this lawsuit, which had been commenced eight months earlier and in which a class had been conditionally certified mere days before. Regardless of whether Defendant's Wisconsin counsel or the DOL knew about this lawsuit, there is no question that Defendant did. Thus, litigation was not "potential," as the letter intimated, but actual. Defendant explains that it meant to refer to other potential litigation—initiated by the DOL, for example. But the use of the word "potential" implied there was no "actual" litigation, which made the letter misleading and confusing.

Even if no reference had been made to potential litigation, the letter would have been misleading and confusing. The letter did not advise the recipients that a lawsuit had been filed, that a class recently had been conditionally certified, or that the recipient might be qualified to opt into the class. This information was critical to the recipients' ability to make an informed choice about whether to accept the payment or pursue their claims through litigation. Defendant places great emphasis on the DOL's supposed approval of the wording of the letter, but this assertion finds no support in the record. Moreover, the DOL's approval has little significance if the agency was not apprised of all the facts, namely the existence of this lawsuit.

The Court is hard-pressed to believe that the timing of the letters was a coincidence. Rather, the most plausible inference is that the timing was designed to capitalize on the omissions, increase confusion, and undermine the judicial notice. The letters were dated nine days after the class was conditionally certified and would have arrived prior to the judicial notice, which would have allowed the recipients to cash the checks and return the waivers before ever learning about this case. Furthermore, Defendant sent the letters without any notice to the Court or to Plaintiffs' counsel. If Defendant believed so strongly in the propriety of its letter, the Court questions why Defendant did not share its intention and the contents of the communication with the Court and opposing counsel.

Once the potential class members received the Notice of Pendency of Lawsuit, the potential for confusion was heightened even further. Now, the individuals had two sets of correspondence, neither one referring to the other, concerning their rights under FLSA. Defendant's letter refers to the DOL investigation, DOL-required production and nondiscretionary bonus payments for 2009 and 2010, voluntary production and nondiscretionary bonus payments for 2008, and a general waiver of legal rights. The Notice of Pendency of Lawsuit, on the other hand, refers to the ongoing FLSA collective action, overtime wages for 2008 through 2011, and the recipients' right to participate in the lawsuit.

To remedy Defendant's misleading, confusing, and damaging correspondence, the Court recommends the following. All present and former branch managers and lawn specialists who worked for Defendant from July 15, 2008 to the present, and who received both the Notice of Pendency of Lawsuit and Defendant's June 29, 2011 letter, should be counted as opt-in plaintiffs for the eventual purpose of calculating damages. This recommended relief is specifically targeted toward Defendant's misconduct, not to punish Defendant's lawyers or to endorse Plaintiffs'

conduct in the pretrial process. Moreover, in consideration of the remaining pretrial and trial deadlines, this remedy has the added effect of allowing the parties to remain on schedule with summary judgment briefing and trial.

### III. RECOMMENDATION

Accordingly, **IT IS HEREBY RECOMMENDED** that Plaintiffs' Motion to Extend Opt-In Period (Doc. No. 61) be **DENIED** as to an extension of the opt-in period but **GRANTED** as to other relief. Specifically, the Court recommends that all present and former branch managers and lawn specialists who worked for Defendant from July 15, 2008 to the present, and who received both the Notice of Pendency of Lawsuit and Defendant's June 29, 2011 letter, should be counted as opt-in plaintiffs for the eventual purpose of calculating damages.

Dated:  September 7, 2011

       s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **September 23, 2011**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words.  The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the District Judge is not required to review a transcript or the District Judge directs otherwise.