UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cory Soderberg, Adam Klym, Joe                          Civil No. 10-3429 (PAM/JJG)
Jadoonath, Nathan Ostlund, and
Ryan Rud, on behalf of themselves
and all others similarly situated,

                          Plaintiffs,

v.                                              **MEMORANDUM AND ORDER**

Naturescape, Inc.,

                          Defendant.

---

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment
(Docket No. 68), Defendant's Motion for Summary Judgment (Docket No. 79), Defendant's
Motion to De-Certify Conditional Class (Docket No. 73), and Defendant's Objection to
Report and Recommendation (Docket No. 119). For the reasons that follow, the Court grants
in part and denies in part Plaintiffs' Motion for Partial Summary Judgment, denies
Defendant's Motion for Summary Judgment, grants Defendant's Motion for De-Certification,
and denies Defendant's Objection to Report and Recommendation as moot.

**BACKGROUND**

Plaintiffs Cory Soderberg, Adam Klym, Joe Jadoonath, Nathan Ostlund, and Ryan
Rud are former employees of Defendant Naturescape, Inc., a lawn care service provider with
its principal place of business in Wisconsin. Naturescape operates 24 branches in six states.
Plaintiffs worked as branch managers and lawn specialists for Naturescape and claim to be

non-exempt laborers for the purposes of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Plaintiffs claim that Naturescape did not pay them adequate overtime compensation.

It is undisputed that Naturescape paid Plaintiffs overtime pursuant to the fluctuating workweek method ("FWW").[1] The FWW is expressly permitted by federal regulation and is designed to apply to employees whose hours vary from week to week. 29 C.F.R. § 778.114. If the FWW applies, then employers may pay overtime at a rate of one-half of an employee's fixed hourly wage (50%), rather than full overtime pay, which is one and one-half of the hourly wage (150%). Id.

It is undisputed that Naturescape's FWW salary plan worked in the following way: Naturescape paid Plaintiffs an annualized salary distributed in 26 bi-weekly installments regardless of how many hours Plaintiffs worked in a given week. (Defs.' Interrog. Answer No. 4 (Docket No. 102-5).) If Plaintiffs worked more than 40 hours in a given week, Naturescape paid them overtime. (Id.) Naturescape calculated the amount of overtime pay due by first dividing the employee's annualized salary by 52 to determine the weekly salary. (Id.) Naturescape then divided the weekly salary by 40 to determine the hourly rate of pay, which is also referred to as the "regular rate" of pay. (Id.) From there Naturescape divided the regular rate of pay in half, and paid the employee that amount for each hour of overtime worked. (Id.) For example:

---

[1]After this case was filed, Naturescape decided to no longer use the FWW.

[I]f an employee is paid an annualized salary of $26,000, the weekly salary is computed as $26,000/52 = $500/wk. The employee's regular rate is calculated as the weekly salary divided by 40 hours ($500/40 = $12.50/hr.). Because the employee has already been paid a salary for all hours, the extra half time is paid as extra compensation for hours worked over 40. Thus, the $12.50 regular rate is divided by two ($12.50/2 = $6.25). The employee receives the additional $6.25/hour for the hours worked over 40.[2]

(Id.)

Naturescape tendered other types of compensation to Plaintiffs as well, including production and year-end bonuses, which resulted in the fluctuation of Plaintiffs' pay in the weeks in which those bonuses were issued. The production bonuses–paid exclusively to lawn specialists–were based on the number of lawn applications performed, not the number of hours worked. (Furry Dep. at 18-19; 85-87 (Docket No. 76-1).) Lawn specialists were eligible to earn production bonuses during several six-week periods during the year. (Id. at 18, 129-131.) Year-end bonuses were paid to both branch managers and lawn specialists and were based on the collective performance of each branch. (Id. at 37.) Each member of the branch received a share of the year-end bonus based on their contribution to the branch's performance. (See id.)

Naturescape admits that production and year-end bonuses were "non-discretionary" under FLSA. In other words, Naturescape was obligated to pay the bonuses if Plaintiffs met the stated criteria for earning them. Naturescape also admits that it did not factor in the

---

[2] Naturescape sets aside extra compensation equal to one-half the regular rate of pay as a bonus during the winter months. Employees are eligible to receive this bonus if they are still employed by Naturescape at that time. Naturescape's winter pay is not at issue here.

payment of such bonuses when calculating the regular rate of pay for purposes of determining overtime pay. Naturescape even acknowledges that it should have done so under FLSA:

> Naturescape does not dispute that the production bonuses (paid five times a year for a six week period) and year-end bonus (paid once a year) are non-discretionary <u>and should be included as wages to determine the regular rate upon which to based overtime payments</u>.

(Def.'s Opp'n Mem. at 30 (emphasis added) (Docket No. 103).) Naturescape argues, however, that its failure to include bonuses in the determination of the regular rate of pay is of no moment because it paid Plaintiffs more than it was required to pay them under the FWW. (<u>Id.</u>)

Plaintiffs filed a one-count FLSA Collective Action Complaint on August 12, 2010, under 29 U.S.C. § 216(b). (<u>See</u> Compl. (Docket No. 1).) Plaintiffs allege, first, that Naturescape violated FLSA by applying the FWW without meeting the prerequisites for doing so and, second, that even if the FWW does apply, Naturescape did not properly calculate their payments under the FWW. (Compl. ¶¶ 34-41.)

In May 2011, Plaintiffs filed a Motion to Certify Conditional Class under FLSA, seeking to include other Naturescape employees who may have been harmed by Naturescape's alleged FLSA violation. On June 20, 2011, after full briefing and oral argument, the Court granted Plaintiffs' Motion. (Docket No. 29.) On July 5, the Court issued an Order approving the parties' agreed-upon notice to potential class members. (Docket No. 31.) Plaintiffs filed 83 Consent forms during the opt-in period. (Docket Nos.

39-44, 88.)

It was recently disclosed to the Court that in October 2010–just two months after this lawsuit was filed–the Department of Labor ("DOL"), which oversees FLSA compliance, sent Naturescape's president a letter indicating its intent to audit Naturescape's payroll records. (Docket No. 100 at 2.)  As a result of that audit, the DOL concluded that Naturescape did not properly pay overtime on production and non-discretionary bonuses in 2009 and 2010.  (Id.)

On July 14, 2011, nine days after the Court granted conditional class certification and six days before judicial notice was authorized, Naturescape sent a DOL waiver and release form purporting to release Naturescape from any and all liability associated with back pay, and a check for back wages to 117 current and former employees–including some named Plaintiffs and some opt-in Plaintffs, among others.  (Id.)  For 99 additional individuals who were owed less than $20 in back wages, Naturescape sent only a check and a waiver form. (Id.)  Of those 216 people who received correspondence from Naturescape, 148 have cashed their checks.  (Id.)

Plaintiffs' counsel was alerted to the letter by one of the named Plaintiffs, who received the letter, waiver form, and a check.  Plaintiffs then filed a letter with Magistrate Judge Graham seeking a case management conference to discuss a possible extension of the opt-in period in light of Naturescape's conduct vis-a-vis the DOL investigation.   On September 8, 2011, Magistrate Judge Graham denied the requested extension, but concluded that Naturescape's letter was "misleading, confusing, and damaging to the judicial notice of the action."  (Id. at 5.)  Magistrate Judge Graham recommended that all former and current

branch managers and lawn specialists who worked for Naturescape during the class period and who received Naturescape's communications addressing the DOL findings be automatically counted as opt-in Plaintiffs for purposes of calculating damages. (Id. at 6.) Naturescape has objected to Magistrate Judge Graham's Report and Recommendation. (Docket No. 119.)

## DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

## A.    Applicability of the FWW

6

The parties disagree about the applicability of the FWW and their motions overlap to a significant degree on this point.  Naturescape may apply the FWW if:  (1) the employee's hours fluctuate from week to week; (2) the employee receives a "fixed weekly salary" that remains the same regardless of the number of hours worked during the week; (3) the fixed salary provides compensation at a regular rate that is not lower than minimum wage; and (4) there is a "clear mutual understanding" among the parties that the employer will pay a fixed weekly salary regardless of the number of hours worked.  29 C.F.R. § 778.114(a); Ahle v. Veracity Research Co., 738 F. Supp. 2d 896, 918 (D. Minn. 2010) (Montgomery, J.).  If these four prerequisites are met, the employer may pay the employee a 50% overtime premium in addition to the fixed weekly salary for all hours worked in excess of 40.  29 C.F.R. § 778.114(a).

There is a split of authority over which party has the burden of proof under § 778.114 and neither this Court nor the Eighth Circuit has directly weighed in on the issue.  Compare Davis v. Friendly Express, Inc., No. 02-14111, 2003 WL 21488682, at *3 (11th Cir. Feb.6, 2003) (employee bears the burden); Samson v. Apollo Res., Inc., 242 F.3d 629, 636 (5th Cir. 2001) (same), with Monahan v. County of Chesterfield, 95 F.3d 1263, 1275 n.12 (4th Cir. 1996) (employer bears the burden).  The issue need not be decided here, however, because the Court's decision is not dependent on who bears the burden of proof.

Plaintiffs contend that Naturescape does not have the ability to apply the FWW because (1) Plaintiffs did not have a fixed salary due to the payment of non-discretionary bonuses, and (2) the parties did not have a clear mutual understanding of the method of

payment.

### 1.    Fixed Salary

Plaintiffs first argue that Naturescape was not permitted to apply the FWW because the fixed-salary requirement was not met.  Specifically, Plaintiffs argue that Naturescape's payment of production and year-end bonuses necessarily resulted in varied pay, rather than a fixed salary.  (Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. at 8 (Docket No. 70).) Naturescape argues that the payment of performance-based bonuses does not impact its ability to apply to FWW.  Neither party has cited to a case dealing directly with the core issue in this case:  whether the payment of non-discretionary performance-based bonuses precludes use of the FWW, and the Court has found no such case.

Plaintiffs principally rely on O'Brien v. Town of Agawam, 350 F.3d 279, 288 (1st Cir. 2003) and  Brumley v. Camin Cargo Control, Inc., No. 08-1798, 2010 WL 1644066 (D.N.J. Apr. 22, 2010), for the proposition that the payment of a bonus violates FWW's fixed-salary prerequisite.  Both O'Brien and Brumley involved compensation tied directly to the hours of work (e.g., hourly shift premiums and shift differentials) or specific days worked (e.g., vacation days and scheduled days off).  In other words, all of the time worked by the employees was taken into consideration when the employees' weekly pay was determined. In O'Brien, the court concluded that the payment of shift differentials for nighttime hours and extra pay for hours worked beyond 8 hours in a given day resulted in additional pay that precluded application of the FWW.  350 F.3d at 289.  In coming to this conclusion, the court equated the facts before it to those in Heder v. City of Two Rivers, 295 F.3d 777 (7th Cir.

2002), in which the Seventh Circuit stated that the fixed-salary requirement was not met where the employees were paid for every hour worked. The court in <u>Heder</u> explained that such a payment scheme directly contradicts the premise and utility of the FWW: "Every extra hour is calculated and paid for. That is incompatible with treating the base wage as covering any number of hours at straight time." <u>Heder</u>, 295 F.3d at 780. In <u>Brumley</u>, the court likewise determined that day-off and vacation pay rendered the FWW inapplicable because the employees' weekly pay fluctuated depending on the number and nature of the hours worked. 2010 WL 1644066, at *5-6.

The <u>O'Brien</u> and <u>Brumley</u> courts concluded that such payments were inconsistent with the FWW because the FWW expressly requires that the salary be fixed regardless of "whatever hours [the employee] is called upon to work in a workweek." 29 C.F.R. § 778.114(a). When employees are given additional compensation because of how or when those hours are worked, the salary is no longer "fixed." Thus, <u>O'Brien</u> and <u>Brumley</u> are in keeping with the plain language of 29 C.F.R. § 778.114, which requires a fixed weekly salary unaffected by the hours worked (excluding overtime).

In contrast, this case involves payments based on criteria untethered to the hours Plaintiffs worked, namely compensation based on Plaintiffs' individual and collective performance. Plaintiffs are paid the same weekly salary regardless of the number of hours worked. It is undisputed that the production bonus was based on the number of lawns serviced and that the year-end bonuses were based on the overall performance of each branch. Such bonuses were earned irrespective of the number of hours worked.

Accordingly, O'Brien and Brumley do not dictate the result here.[3]

Naturescape relies principally on Lance v. The Scotts Co., No. 04-5270, 2005 WL 1785315 (N.D. Ill. July 21, 2005), in support of its position.[4]  Lance is likewise inapposite, but is nevertheless instructive.  Lance involved the issue of whether weekly production-based commission payments violated the FWW's fixed-salary requirement.  Lance, 2005 WL 1785315, at *6.  The court determined that the fixed-salary requirement was met despite the fluctuations in weekly pay because DOL regulations expressly allow commission payments to be added to the employee's other weekly earnings for purposes of determining the regular rate of pay.  Id. (citing 29 C.F.R. § 778.118).

Like the commissions in Lance, the bonuses in this case are expressly included in the regular rate of pay pursuant to statute.  See 29 U.S.C. § 207(e) (regular rate of pay includes non-discretionary bonuses).  Applying similar reasoning, the statutory permission to include performance-based bonuses in the regular rate of pay does not run afoul of the FWW.

Moreover, the mere fact that Plaintiffs' regular rate of pay may have fluctuated from

---

[3]The other cases relied on by Plaintiffs are consistent with O'Brien and Brumley, and are thus inapposite.  See, e.g., Ayers v. SGS Control Servs., Inc., No. 03-9077, 2007 WL 646326, at *8-19 (S.D.N.Y. Feb. 27, 2007) (finding no fixed salary because of the payment of day-off pay and sea pay); Adeva v. Intertek USA, Inc., No. 09-1096, 2010 WL 97991, at *2-3 (D.N.J. Jan. 11, 2010) (finding no fixed salary because of the payment of offshore pay, holiday pay, and day-off pay).

[4]Naturescape also relies on Cash v. Conn Appliances, Inc., 2 F. Supp. 2d 884, 893, n.17 (E.D. Tex. 1997), which notes that productivity bonuses are included in the regular rate of pay when the FWW is applied.  The Cash court did not expressly address the issue of whether payment of those bonuses violated the FWW's fixed-amount prerequisite.  See id.

week to week does not dictate a finding that Plaintiffs did not receive a fixed salary. The applicable regulation specifically contemplates that the "regular rate of the employee will vary from week to week." 29 C.F.R. § 778.114(a). Indeed, as noted, the "regular rate" statutorily includes "all remuneration for employment paid to, or on behalf of, the employee[,]" and is thus not limited to the employee's salary. 29 U.S.C. § 207(e). Certain types of remuneration, such as the hour-related premiums involved in O'Brien and Brumley, are expressly excluded from the calculation of the regular rate of pay. 29 U.S.C. §§ 207(e)(5)-(7). Non-discretionary performance-based bonuses are treated differently, however, and are considered part of an employee's regular rate of pay. See id.; see also 29 C.F.R. § 778.208 ("Bonuses which do not qualify for exclusion from the regular rate as one of these types must be totaled in with other earnings to determine the regular rate on which overtime pay must be based."). Thus, as a general matter, FLSA makes a clear distinction between the types of remuneration involved in the cases on which Plaintiffs rely and the type of remuneration involved in this case. The plain language of the relevant statutory and regulatory provisions supports the conclusion that Naturescape's payment of performance-based bonuses did not preclude application of the FWW.

### 2.    Clear Mutual Understanding

Plaintiffs also argue that there was no "clear mutual understanding" among the parties that Naturescape would pay them a "fixed salary regardless of the number of hours worked." (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 11 (Docket No. 106).) Plaintiffs point first to the fact that they were paid bonuses in addition to a salary and overtime, as evidence

of a lack of mutual understanding.   (Id.)   This fact alone does not suggest a lack of

understanding, but rather goes to the previously discussed issue of whether Plaintiffs were

paid a fixed salary within the meaning of FLSA.   As already discussed, the payment of

bonuses does not destroy the fixed salary requirement and thus has no bearing on the

requirement that there be a clear mutual understanding among the parties.

Courts have recognized that § 778.114 does not require that the parties' "clear and

mutual understanding" extend to precisely how overtime premiums would be calculated.

Valerio v. Putnam Assoc. Inc., 173 F.3d 35, 40 (1st Cir. 1999).   "The parties must only have

reached a clear mutual understanding' that while the employee's hours may vary, his or her

base salary will not."   Id.; see also Bailey v. County of Georgetown, 94 F.3d 152, 156-57

(4th Cir. 1996) (rejecting the proposition that "an employee must also understand the manner

in which his or her overtime pay is calculated").   Here, the Employment and Training Manual

specifically explains that Plaintiffs would be paid on a salary basis for all hours worked short

of overtime.   (Docket No. 102-2 at 6.)   And each named Plaintiff has admitted that he

understood he would be paid a salary plus overtime at half the regular rate of pay.   (See

Soderberg Dep. at 56-57; Klym Dep. at 41, 51 (Docket No. 76-4); Jadoonath Dep. at 24-25

(Docket No. 76-5); Ostlund Dep. at 22-29 (Docket No. 76-6); Rud Dep. at 19-21 (Docket No.

76-7).)

Plaintiffs point to Peterson v. Snodgrass, 683 F. Supp. 2d 1107, 1125 (D. Or. 2010),

in support of their position.   In Peterson, the plaintiff was required to work 50 hours a week

and she received a fixed annual salary of $50,000 for that number of hours.   Id.   The plaintiff

12

received additional compensation for hours worked beyond 50.  Id.  The court concluded that the employer could not rely on the FWW for purposes of calculating damages at half the plaintiff's hourly rate of pay because the plaintiff was required to work at least 50 hours a week in order to earn her annual salary of $50,000.  The court determined that this "negate[d] the possibility that the parties had a clear mutual understanding that the $50,000 annual salary covered all of Peterson's hours no matter how few or many hours per week she worked."  Id. Here, unlike in Peterson, Plaintiffs were not required to work a certain number of hours each week in order to earn their annual salary.  As Plaintiffs note, Naturescape's Employment and Training Manual states that employees were expected to work a certain number of hours in a year, but the failure to do so would merely reduce the employee's paid time off for the following year; it would not negatively impact the employee's fixed salary. (Docket No. 102-02 at 6.)  As such, Plaintiffs' reliance on Peterson is misplaced.

In summary, the Court concludes that there was the requisite "clear and mutual understanding" among the parties and, as such, Naturescape was eligible to apply the FWW.

**B.    Calculation Under the FWW**

Plaintiffs next argue that even if Naturescape was entitled to use the FWW, it did so improperly.  Specifically, Plaintiffs claim that Naturescape was required to factor in the production and year-end bonuses when determining each Plaintiff's regular rate of pay. Naturescape concedes that it did not include the bonus payments in its determination of

Plaintiffs' regular rate of pay, and even admits that it should have done so.[5]   (Def.'s Opp'n Mem. at 30.)  Accordingly, there is no factual dispute with respect to this issue.  Rather, the issue is whether Naturescape's failure to include bonus payments in the regular rate of pay subjects it to FLSA liability.

Naturescape contends that its failure to include bonus payments in the regular rate of pay is of no moment because Plaintiffs received more compensation than they were entitled to under the FWW.  (Id.)  Even if that were true, Naturescape did not have the discretion to exclude the bonus payments from Plaintiffs' regular rate of pay.  The applicable regulation mandates the inclusion of non-discretionary bonus payments in the determination of the regular rate of pay and, by extension, overtime pay:  "Where a bonus payment is considered a part of the regular rate at which an employee is employed, it must be included in computing his regular hourly rate of pay and overtime compensation."  29 C.F.R. § 778.209 (emphasis added).  Thus, Naturescape was required to follow the statutory protocol for calculating the amounts it was legally required to pay Plaintiffs.  Naturescape was free to give Plaintiffs more than required only after properly calculating the actual amount due to each Plaintiff under the FWW.  See 29 C.F.R. § 778.114(c) (FLSA "does not prohibit paying more" than 50 percent for overtime hours).

It may be that Naturescape did overpay Plaintiffs, but the record is far from clear in

---

[5] Naturescape also admits that it used 40 hours to calculate the hourly rate of overtime pay, rather than the actual number of hours worked.  Plaintiffs do not base their motion on this method of calculating the regular rate of pay, but it may ultimately bear on the issue of damages.

that regard. Because Naturescape met the prerequisites for application of the FWW, Plaintiffs damages should be determined by properly calculating amounts owed under the FWW, rather than standard overtime pay that Plaintiffs seek.[6] See Cash, 2 F. Supp. 2d at 896 (when the employer makes a computational error in applying the FWW, "[d]amages [are] equal to the difference between the amount resulting from the correct calculation of overtime compensation using the fluctuating workweek method and the amount of overtime compensation actually paid.") (citing Yadav v. Coleman Oldsmobile, Inc., 538 F.2d 1206, 1207-08 (5th Cir. 1976), and Mayhew v. Wells, 125 F.3d 216, 219 (4th Cir. 1997)).

## C.    Exempted Employees

Naturescape argues that it is entitled to judgment in its favor as it relates to named Plaintiff Corey Soderberg–the only branch manager named in this case–because branch managers are exempt from FLSA overtime regulations. In other words, Naturescape argues that it was not obligated under FLSA to pay Soderberg any overtime and therefore cannot be held liable to him for underpaying his overtime premiums.

"Disputes regarding the nature of an employee's duties are questions of fact, but the ultimate question whether an employee is exempt under the FLSA is an issue of law." Jarrett v. ERC Props., Inc., 211 F.3d 1078, 1081 (8th Cir. 2000) (citing Icicle Seafoods, Inc. v.

---

[6]Any damages owed to Plaintiffs will be offset by any payments already made by Naturescape in relation to the ongoing Department of Labor investigation into the underpayment of overtime premiums.

Worthington, 475 U.S. 709 (1986)).

As an initial matter, the record establishes that Naturescape treated Soderberg as a non-exempt employee throughout his tenure with the company, irrespective of his title. Naturescape expressly agreed to pay Soderberg overtime wages consistent with the FWW, and–calculation errors aside–did pay Soderberg pursuant to the FWW.  And Soderberg acknowledged that he would be paid pursuant to the FWW by signing the page of the Employment and Training Manual which explains the pay schedule.  (Soderberg Dep. at 10, 42 and Ex. 5 (Docket No. 76-2).)  That page explicitly stated that Soderberg would be paid overtime premiums at a rate of 50% his regular rate of pay for each hour worked over 40 hours.  (Id.)  In addition, Soderberg was required to track all of the hours he worked and to submit time sheets for purposes of calculating overtime.  (Furry Dep. at 68-70 (Docket No. 71-1).)  Under these circumstances, the Court finds that Naturescape may well be estopped from now claiming that Soderberg was an exempt employee.  Courts have recognized that employers may be estopped from relying on the affirmative defense of exemption when the employer treats the employee as non-exempt.  Molina v. First Line Solutions LLC, 566 F. Supp. 2d 770, 779-80 (N.D. Ill. 2007); Kautsch v. Premier Commc'ns, 502 F. Supp. 2d 1007, 1015 (W.D. Mo. 2007); Bell v. Foster Poultry Farms, No. CV-F-05-1539, 2007 WL 869119, *3-4 (E.D. Cal. Mar. 22, 2007).  Plaintiffs have made no claim or argument as to estoppel, however, and the Court is loath to decide this matter on an issue the parties have not addressed.

Whether an employee is exempt under FLSA requires a determination as to whether

the employee is "employed in a bona fide executive, administrative, or professional capacity, or in the capacity of outside salesman."  29 U.S.C. § 213(a)(1).  Naturescape argues that Soderberg was an "executive" or employed in an "administrative capacity."  Naturescape has the burden to establish that Soderberg worked in an exempt capacity.  Fast v. Applebee's Int'l, Inc., 638 F.3d 872, 882 (8th Cir. 2011) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974)).

### 1.    Executive Exemption

In order for Soderberg to be deemed an executive for purposes of this analysis, Naturescape must establish the following:  (1) that he was paid on a salary basis at a rate of not less than $455 per week; (2) that his primary duty was the management of branch; (3) that he directed the work of two or more other employees; and (4) that he had the authority to hire or fire other employees or to weigh in meaningfully on the hiring, firing, advancement, promotion or any other change of status of other employees.  29 C.F.R. § 541.100.

The crux of the parties' dispute on this issue is whether Soderberg's "primary duty" was management of the branch.  "As a general rule, the regulations provide that if an employee spends over 50% of his time on managerial duties, his primary duty is management."  Auer v. Robbins, 65 F.3d 702, 712 (8th Cir. 1995).  Soderberg testified that he spent approximately 80% of his time on non-exempt work, i.e., performing the work of a lawn specialist.  (Soderberg Dep. at 54-55 (Docket No. 76-2).)  Naturescape contends that Soderberg actually did the work of a lawn specialist only 20% of the work day.  (Def.'s

Mem. in Supp. of Decertification Mot. at 14 ¶ 67 (Docket No. 75).)  But the testimony Naturescape cites for this proposition does not support its contention.  (See Soderberg Dep. at 19-25.)  Accordingly, the Court finds that there is no genuine dispute that Soderberg spent approximately 80% of his work day doing non-exempt work.

The Court will also consider the following additional factors to determine whether Soderberg's primary duty was management:  (1) the relative importance of managerial duties as compared with lawn servicing; (2) the frequency with which Soderberg exercised discretionary powers; (3) Soderberg's freedom from supervision; and (4) the relationship between Soderberg's salary and the salary of lawn specialists.  29 C.F.R. § 541.102; Auer, 65 F.3d at 712; Smith v. Heartland Auto. Servs., 418 F. Supp. 2d 1129, 1135 (D. Minn. 2006) (Kyle, J.).  These factors overlap and the Court will address them accordingly.

### a.   Importance of Managerial Duties

Naturescape argues that Soderberg's managerial duties were more important than his non-managerial duties because they are managerial in nature.  (Docket No. 81 at 18-19; Docket No. 122 at 9-10.)  This argument is circular and does not address the question. Plaintiffs argue that Soderberg's managerial duties were less important than his production duties because he exercised little discretion and merely acted as a conduit for decisions made by more senior management.  (Docket No. 106 at 19-20.)  The record supports this contention.  Specifically, Soderberg testified that he did not, among other things, (1) make final hiring decisions; (2) discipline employees; (3) fire employees; (4) set performance goals for employees; (5) dictate work routes for lawn specialists; (6) set schedules for lawn

18

specialists; or (7) have independent authority to direct sales efforts, stock inventory, or set wages. (See Soderberg Dep. at 19, 31-34, 42-45, 48-49, 71, 115-16.) Naturescape has not refuted these statements with supported facts. Thus, Naturescape has not met its burden on this point.

### b.     Discretionary Powers/Freedom from Supervision

As noted above, the facts in the record support the conclusion that Soderberg, although acting in a managerial capacity, exercised little, if any, discretion. Naturescape does not effectively refute this finding.   As an example of Soderberg's discretion, Naturescape points to the fact that although branch managers were required to hold weekly branch meetings, they could decide when within the week to have such a meeting. (Docket No. 81 at 19; Docket No. 75 at 12.) The Court is not convinced that such discretion is indicative of having primarily managerial duties. Where discretion would be probative on this issue, it is lacking in this case. There is no dispute that Soderberg did not have the independent ability to hire, fire, or discipline branch employees; to set branch goals; to set schedules; or to direct sales efforts. (See Soderberg Dep. at 19, 31-34, 42-45, 48-49, 71, 115-16.) Accordingly, the Court finds that Naturescape has not met its burden to establish that Soderberg had the requisite discretion or managerial independence.

### c.     Salary Differential

It is undisputed that Soderberg earned approximately $5.00 more per hour as a branch manager than as a lawn specialist. (See Soderberg Dep. at 54.) This increase in salary seems appropriate in light of the added responsibilities Soderberg undertook as branch manager, but

is not so great as to suggest that the nature of his work was primarily managerial. Thus, this factor does not support a finding that Soderberg's primary duty was managerial.

In short, Naturescape has failed to meet its burden of establishing that Soderberg was an exempt employee under the executive-capacity exemption.

## 2. Administrative Exemption

Naturescape argues that if Soderberg was not an executive, he is still exempt under the administrative exemption. In order to apply this exemption, Naturescape must establish that: (1) Naturescape paid Soderberg not less than $455 per week; (2) Soderberg's "primary duty" was the performance of office or non-manual work directly related to Naturescape's general business operations; and (3) Soderberg exercised discretion and independent judgment in undertaking his primary duties. 29 C.F.R. § 541.200. Under the facts as they relate to Soderberg, this analysis closely mirrors the executive-exemption standard. For the reasons stated above, Naturescape has not met its burden as to this exemption either.[7]

The record supports the conclusion that Soderberg was not an exempt employee. Thus, the Court's determination that Naturescape did not properly calculate overtime premiums under the FWW applies to Soderberg in his capacity as branch manager.

## D. Decertification

---

[7]Naturescape also contends that Soderberg was an exempt employee under the "combination" exemption, which takes into consideration exempt duties of different varieties, e.g., executive duties and administrative duties. 29 C.F.R. § 541.708. Here, Soderberg's competing duties were not all exempt. Indeed, Soderberg spent most of his time on acknowledged non-exempt duties, i.e., lawn production. The combination exemption is therefore inapplicable.

This case is now in the second phase of the class-certification process, which requires the Court to look more closely at whether collective action is appropriate. It is not uncommon for courts in FLSA cases to certify a conditional class only to decertify that class during the second phase. The decision to certify or decertify a class under 29 U.S.C. § 216(b) is within this Court's discretion. Nerland v. Caribou Coffee Co., 564 F. Supp. 2d 1010, 1018 (D. Minn. 2007) (Schiltz, J.). The Court concludes that decertification of the class is appropriate under the present circumstances.

FLSA contemplates collective actions where the members of the proposed class are "similarly situated." 29 U.S.C. § 216(b). The determination of whether class members are "similarly situated" under FLSA requires the consideration of three factors: (1) the extent and consequences of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. Burch v. Qwest Commc'ns, Int'l, 677 F. Supp. 2d 1101, 1114 (D. Minn. 2009) (Davis, C.J.). "Another question the Court considers is if Plaintiffs can 'demonstrate that the Defendant[ ] had a common policy or plan in violation of the FLSA that negatively impacted the original and opt-in Plaintiffs.'" Id. (citations omitted). Plaintiffs bear the burden of establishing that they are similarly (but not identically) situated. Smith v. Heartland Auto. Servs., Inc., 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005) (Kyle, J.).

Here, this inquiry is streamlined given the Court's determination that Naturescape is liable to Plaintiffs for improperly calculating overtime premiums. For example, the disparate

employment settings of the Plaintiffs are no longer relevant given the determination of liability.  And the Court has found that Naturescape violated a common pay policy by failing to accurately calculate overtime premiums under the FWW.  However, the Court finds that significant issues will arise if the case is permitted to proceed as a collective action.  Indeed, the individualized defenses disclosed by Naturescape convince the Court that such issues will dwarf the straightforward issue of damages as to the named Plaintiffs.

For example, the possibility of mini-trials relating to exemption render collective treatment unmanageable, particularly given the looming trial date.[8]  Although the Court has concluded that Soderberg was not an exempt employee, there is evidence in the record that the duties of branch managers differed from branch to branch.  If this is true, then each branch manager would require an individualized inquiry to determine his or her exemption status.  Such an inquiry would likely require additional discovery and motion practice.  This case has already been litigated for more than a year, and the Court sees no benefit to further extending final adjudication as to the named Plaintiffs.  In addition, Naturescape argues that certain of the opt-in Plaintiffs have questionable credibility as to whether the overtime hours reported were accurate.  Naturescape intends to present individualized defenses as to the

---

[8] The exemption issue likely would make collective treatment unwieldy, especially in light of Magistrate Judge Graham's recommendation that the class be expanded to automatically include all current and former branch managers and lawn specialists who worked for Naturescape during the class period.  (Docket No. 100.)  Although it is unclear how many branch managers would be included among the expanded class, it is clear that fact-intensive analyses relating to each branch manager's exemption status would be unmanageable under the current posture of the case.

credibility of each such Plaintiff.  This inquiry alone would render collective treatment unmanageable.

In summary, the Court concludes that the class should be decertified and that this case should proceed on the issue of damages as to the named Plaintiffs only.

**CONCLUSION**

Accordingly, for the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED that**:

1.      Plaintiffs' Motion for Partial Summary Judgment (Docket No. 68), is **GRANTED in part** and **DENIED in part**;

2.      Defendant's Motion for Summary Judgment (Docket No. 79), is **DENIED**;

3.      Defendant's Motion to De-Certify Conditional Class (Docket No. 73) is **GRANTED**; and

4.      Defendant's Objection to Report and Recommendation (Docket No. 119) is **DENIED as moot**.


Dated: <u>November 3, 2011</u>

*s/ Paul A. Magnuson*

Paul A. Magnuson
United States District Court Judge
